■ NEREIDA SANTOS, as Administratrix of the Estate of GUILLERMO SANTOS, Deceased, Respondent, v CITY OF NEW YORK, Appellant.—Judgment of the Supreme Court, Bronx County (Edward Provenzano, J.), entered August 18, 1986, which, after a jury trial on liability (Provenzano, J.), and a jury trial on damages (Hansel McGee, J.), awarded judgment in favor of plaintiff, as administratrix of the estate of Guillermo Santos, in the amount of $295,000, is reversed, on the law, and the motion by defendant for an order dismissing the complaint for failure to establish a prima facie case granted, without costs or disbursements.

On August 29, 1975, plaintiff's decedent, Guillermo Santos, had been in a car with his brother, Carlos. While his brother was driving, he jumped out of the car, started a fight with passersby, then jumped in the auto and drove off.

At about 6:00 P.M. thereafter, he came speeding down Third Avenue, in The Bronx, nearly running down two off-duty police officers, Michael Goodwin and Osiris Maldonado. The officers jumped into Goodwin's car and pursued Santos south on Third Avenue. Santos made a sudden U-turn and began

driving north in the southbound lane, driving up on the sidewalk, striking a pedestrian, and finally coming to a stop in a parking lot after crashing through the lot's fence.

Santos got out of the automobile and ran, chased by Goodwin, on foot, who had his gun out. Goodwin identified himself as a police officer and told the decedent to stop. Santos had first gotten down on his knees but then continued running. As Goodwin continued the chase, he heard someone yell "he's got a gun". Other officers were also chasing Santos and Officers Patrick O'Sullivan and Dennis Sullivan passed Goodwin and apprehended Santos. After a struggle, he broke free and ran toward Goodwin, striking him twice in the head and grabbing Goodwin's off-duty revolver, which Goodwin was still holding.

O'Sullivan and Sullivan, together with Goodwin, struggled with Santos to break the decedent's hold on the weapon. While one of the officers turned Santos around, and with Santos' hand still on the gun, it discharged. The bullet entered decedent's back, exited his chest and wounded Officer O'Sullivan. Santos died in a matter of minutes and this action for wrongful death ensued.

Plaintiff's case consisted, as to the circumstances of the shooting, in the reading of excerpts from the examinations before trial of four of the officers (three of whom, including Goodwin, were available and, in fact, testified at trial for defendant).

Thereafter, plaintiff had admitted into evidence certain exhibits, including Police Department Interim Order 118, which involved only the circumstances under which an officer may *discharge* his weapon and did not set forth the circumstances under which an officer may draw the weapon from his holster. Additionally, plaintiff presented expert testimony. Plaintiff's pathologist and forensic pathologist, Dr. Natarajan, testified, in reference to the deceased autopsy report, that the cause of death was a single gunshot wound to the left back, lungs, aorta and bilateral hemothorax.

The Medical Examiner's laboratory report established that Santos tested negative for narcotics and drugs of abuse, including LSD (although the decedent's brother, Carlos, in a medical history in the autopsy report, indicated that decedent had a history of drug abuse and that he had told Carlos he had taken LSD the day of the incident).

Dr. Natarajan testified that the Medical Examiner's tests would not reveal whether the deceased was intoxicated from inhalation of toxic fumes. Further, the doctor concluded from

the autopsy report that the decedent's wound was not a contact or close-range gunshot wound since there was no evidence of gunpowder burns around the wound. Although she conceded clothing would have something to do with the amount of powder present on the deceased's skin, she had not examined the deceased's clothing. She testified that decedent's actions, while possibly drug-related and possibly not drug-related, were consistent with an acute psychotic episode.

Jose Santos, another of decedent's brothers, testified that the decedent had worked with Red Devil paint remover the day he was shot. In this regard, Dr. Jesse Bidanset, a pharmaceutical science professor, toxicologist for the Rockland County Medical Examiner and general consultant, testified that the Red Devil paint remover used by the deceased contained, in 1975, toxic chemicals which could have triggered a psychotic episode. On cross-examination he added that LSD, taken prior in time so as not to be revealed in the Medical Examiner's tests, could cause similar erratic behavior in "flashbacks". Plaintiff testified that the deceased neither owned a gun nor used drugs.

James M. Sharpe, a witness called by plaintiff, identified himself as director of operations for Wells Fargo Armored Division for the past six years. He testified he had been a patrolman "out on the street" in the City of New York for 13 years and went up in rank to sergeant, then lieutenant, finally being promoted to captain. He testified at length about his supervisory experience and that he had participated in writing the rules and regulations of the Police Department. After detailing this seemingly impressive background, in response to a hypothetical question involving the circumstances under which Santos was shot, he gave his opinion that Officer Goodwin was not using proper procedure in approaching the decedent with his weapon drawn.

Since Sharpe's testimony was actually contrary to Police Department procedures, defendant city did not close its cross-examination but asked that the witness be available for recall later. Toward the end of the trial, it attempted to recall the witness but was unable to do so, even with the aid of a subpoena.

The city had discovered that Sharpe had never worked for the Police Department of the City of New York as a captain or even a patrolman. In addition, although he stated he was director of operations for Wells Fargo, in reality Sharpe was a driver for that company.

In view of the "very good impression" Sharpe made as a witness, his extensive testimony, and the fact that his was the only testimony in the case by any individual that Officer Goodwin breached the regulations in having his gun out, the city's attorney, who had initially sought to have Sharpe's testimony stricken, immediately withdrew that motion, since he did not believe the jury would be able to disregard such extensive and confident testimony. Defense counsel sought to introduce witnesses to show that Sharpe was both a fraud and incompetent to testify as an expert on police procedures or, in the alternative, sought a mistrial.

Plaintiff moved to strike his own witness's testimony and the trial court granted that motion. Prior to summations, it informed the jury that Sharpe's testimony had been stricken and that they should disregard it, without giving any reason for this action.

After defendant presented police eyewitnesses and a subpoenaed witness, one Anthony Gennario, to testify as to the events surrounding the shooting, Police Officer Beneduci, a department firearms instructor, testified that it was appropriate procedure and tactically correct for Police Officer Goodwin to have his weapon drawn during the chase and at the time he was in the parking lot with the deceased. Essentially, the officer testified that Goodwin did what he was taught to do at the Academy and acted in conformity with police standards and procedures in effect at the time. He distinguished between the procedures for drawing one's weapon as a preparation for the officer's defense in case a crime should escalate, and firing the weapon to protect his life or the life of another which is in imminent danger.

Sergeant Gotay, Assistant Chairman of the Police Physical Education Unit, testified that under the circumstances of this case an officer would have been negligent if he had *not* taken out his revolver. Gotay taught an unarmed self-defense course at the Police Academy but considered the decedent's behavior in this case as causing a dangerous situation, endangering the officers and members of the public, pursuant to which Goodwin's actions were not negligent.

Police Officer Ritter, a forensic expert, and Dr. Daniel McCarthy, a forensic pathologist, testified that the nature of the deceased's wound established that it was the result of a "near contact" shot that entered at an angle. In fact, Officer Ritter testified that he observed powder residue around the bullet entry point. Dr. Montas, of the Medical Examiner's

office, testified that during the time of trial she reviewed slides previously prepared from tissue sections of the deceased's wound. They revealed the presence of discolorations consistent with powder burns. A .22 caliber weapon was found in the car from which the deceased had alighted.

As noted, the court struck the testimony of James Sharpe. It denied defendant's motions to dismiss the case for failure to state a prima facie case and a motion for a mistrial based upon plaintiff's counsel's allegedly inflammatory summation. The jury returned a verdict by which they found Officer Goodwin negligent in causing the deceased's death. Defendant's motion for judgment notwithstanding the verdict, on the ground that as a matter of law the deceased's actions contributed to his death, was denied. Subsequent to trial on liability, a trial for damages was held where a jury found defendant liable in the amount of $300,000, which was reduced by the court to $295,000 after setting aside $5,000 in damages for conscious pain and suffering.

The uncontroverted evidence demonstrated that Officer Goodwin had acted properly throughout the incident and that decedent's death was the accidental and unintended consequence of his struggle for the officer's revolver.

If we were not reversing for failure of the plaintiff to make out a prima facie case, we would find that the denial of a mistrial upon the discovery that James Sharpe was a fraud was an abuse of discretion by the trial court. As detailed above, Sharpe's testimony was highly credible and concerned the central issues in this case. Striking his testimony and instructing the jury to disregard it, without informing them of the reason, prejudiced defendant.

Further, the trial court erred in submitting a charge on Penal Law § 35.30 (justification) over defendant's objection. While the use of a justification charge would be appropriate in the proper case, there was no evidence at all before the jury to support an inference that Officer Goodwin had intentionally shot and killed decedent in the process of arresting him. Further, plaintiff's action was based on negligence and no cause of action was alleged or presented for assault and battery or another intentional tort.

More importantly, however, the only evidence presented by plaintiff which showed any violation by Officer Goodwin of police rules and regulations in having his gun drawn was the "expert testimony" of James Sharpe. Since this false testimony was stricken by the court, there was no showing of any

negligence, carelessness or accident by Goodwin which caused decedent's death. Rather, the unrebutted evidence demonstrated that Goodwin never intentionally discharged his weapon at decedent, even though he was struck by him, and that the gun discharged accidentally as a result of decedent's own actions in struggling for that gun. (Since this case arose under the former contributory negligence law rather than the current comparative negligence statute, CPLR 1411, *any* contributory negligence on decedent's part would bar recovery.)

The *Noseworthy* doctrine *(Noseworthy v City of New York,* 298 NY 76) does not change the result, since that merely lessens the degree of proof required by the plaintiff in a wrongful death action but does not, of course, eliminate the requirement of some, albeit minimal, proof. Thus, plaintiff failed to establish a prima facie case that Goodwin acted negligently in holding the drawn gun in his hand. Concur— Murphy, P. J., Ross and Asch, JJ.

Smith, J., dissents in a memorandum as follows: I agree with the majority that the trial court abused its discretion in refusing to grant a mistrial because of the testimony of James Sharpe who falsely testified that he was a former police officer of the City of New York and gave his opinion that Police Officer Goodwin did not use correct procedures when he approached the decedent with his gun drawn. I believe, however, that the case should be remanded for a new trial on the issue of negligence.

In this case the jury was not asked to make specific findings of negligence and we do not know what the negligence was on which the verdict was based.

The pivotal fact in this case is that the decedent, an unarmed man who was 5-feet, 2-inches tall and weighed 150 pounds, was shot in the back. The testimony of the police officer who shot decedent, Michael Goodwin, and of two other officers who had joined in chasing the decedent (Officers Patrick O'Sullivan and Dennis Sullivan), was that the gun accidently discharged during a struggle. There was also testimony by a witness, Anthony Gennario, that prior to the shot, the decedent was surrounded by police officers. The jury was free to accept or reject this testimony. But even assuming the jury accepted as true the testimony of the police officers that the shooting was an accident and not deliberate, it could still find from the evidence that the defendant City of New York was negligent. The jury was free to conclude that Officer Goodwin was negligent in the handling of his gun during the

chasing and subduing of an unarmed man who was being pursued by a number of police officers.

In *Pfohl v Wipperman* (41 AD2d 891, *affd* 34 NY2d 597 [1974]), decedent was shot while attempting to flee on foot after his car had allegedly gone through a stop sign and the police gave chase. There was testimony by a witness that the gun discharged when the decedent spun around and struck the gun as the police officer neared him. A jury found no cause of action but the trial court set aside the verdict and granted a new trial. The Appellate Division reversed, emphasizing that the issue of the decedent's contributory negligence was one of fact for the jury. The Court of Appeals affirmed the Appellate Division. Here the very nature of the case, a person shot in the back, raises a question of fact as to negligence which a jury rather than a court must determine. This is particularly true in a death case where a plaintiff's burden of proof is not as great as that of an injured plaintiff who can describe the occurrence. *(Noseworthy v City of New York,* 298 NY 76 [1948].)

Moreover, it is clear that expert testimony is not essential to a finding of negligence. *(Collins v City of New York,* 11 Misc 2d 76, *affd* 8 AD2d 613, *affd* 7 NY2d 822 [1959].) In *Collins* the City of New York was found negligent where an off-duty policeman dropped his gun and it discharged, striking the plaintiff.