685 So.2d 294 (1996)
Irish Sedina ARDOIN, Plaintiff-Appellee,
v.
CITY OF MAMOU, Defendant-Appellee,
Ray Allen Ardoin, Defendant.
No. 96-54.
Court of Appeal of Louisiana, Third Circuit.
November 20, 1996.
*296 John Blake Deshotels, for Irish Sedina Ardoin.
John Fayne Wilkes III, Lafayette, for City of Mamou, et al.
Before KNOLL, WOODARD and DECUIR, JJ.

FACTS
WOODARD, Judge.
On April 20, 1993, the plaintiff, Irish Sedina Ardoin, filed for divorce against her husband, Ray Allen Ardoin. She was granted a temporary restraining order against him and on April 21, 1993, she sought and was granted an eviction order, requiring him to remove his belongings from her house, the former family home. The following day, April 22, 1993, Mr. Ardoin went to Ms. Ardoin's home to retrieve his belongings, his sister's belongings, and other personal items including furniture, advising Ms. Ardoin that he was there to collect these items. When the two began to argue, Ms. Ardoin asked him to leave and called the police. Mr. Ardoin left the house and waited by his truck for the police to arrive.
When the officers arrived, Ms. and Mr. Ardoin told the police that Mr. Ardoin was there to retrieve his belongings. Additionally, Ms. Ardoin informed them of the temporary restraining order. The police officers then convinced Mr. Ardoin to leave.
Later that evening, Ms. Ardoin called Chief Manuel Jasper and asked why Mr. Ardoin had not been arrested when he violated the TRO. During the same conversation, Ms. Ardoin also told Chief Jasper that she no longer wanted Mr. Ardoin arrested. The next evening, April 23, 1993, Mr. Ardoin returned to Ms. Ardoin's home and shot her twice.
On February 11, 1994, Ms. Ardoin filed suit against Mr. Ardoin and the City of Mamou. After a bench trial, the court found Mr. Ardoin completely at fault for Ms. Ardoin's injuries and awarded her $150,995.00 in damages. She appeals the judgment insofar as it failed to assign any fault to the City of Mamou. For the following reasons, we affirm.

LAW & DISCUSSION
A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840 (La.1989). The reviewing court must determine not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one under the evidence. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990). Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell, 549 So.2d 840.
*297 Factual findings by the trier of fact, who is in a better position to judge the demeanor, tone and credibility of the witnesses, are subject to the manifest error/clearly wrong standard of review. Fontenot v. Fontenot, 546 So.2d 322 (La.App. 3 Cir. 1989).

REMEDIES FOR VIOLATIONS OF TEMPORARY RESTRAINING ORDERS
Because the nature and application of temporary restraining orders is central to the facts and arguments asserted in this case, we feel it necessary to briefly discuss the law and jurisprudence relating to such orders.
The purpose of an "injunction" is not to afford a remedy for what has happened in the past, but to prevent the occurrence of acts in the future which are unlawful or injurious. Louisiana Livestock Sanitary Bd. v. Prather, 301 So.2d 688 (La.App. 3 Cir.1974). La.Code Civ.P. art. 3601 authorizes the court to issue a temporary restraining order during the pendency of an action for an injunction. Thus, the temporary restraining order is ancillary to the action for an injunction. La.Code Civ.P. art. 3611 further provides that disobedience of or resistance to a temporary restraining order ... is punishable by contempt of court. While contempt may be defined as either criminal or civil, the nature of the action is a civil one and the authority to punish for contempt of court falls within the inherent power of a court to aid in the exercise of its jurisdiction and to enforce its lawful orders. In re Merritt, 391 So.2d 440 (La.1980). When the above code articles and jurisprudence are taken in conjunction, it can be seen that, as a civil action punishable by contempt, the proper remedy for an aggrieved party asserting a violation of a court order is to petition the court for enforcement of the order. Harper v. Harper, 537 So.2d 282 (La.App. 4 Cir. 1988) (Schott, C.J., concurring). In recent years, however, the legislature has recognized that petitioning the court for a civil contempt action is not necessarily the most effective way of providing aggrieved parties with relief. In particular, La.R.S. 46:2131, the Domestic Abuse Assistance Act, states that:
[I]t is the intent of the legislature that the official response of law enforcement agencies to cases of domestic violence shall stress the enforcement of laws to protect the victim and shall communicate the attitude that violent behavior is not excused or tolerated.
As can be seen from La.R.S. 46:2131, which is the "purpose" section of the Domestic Abuse Assistance Act, the legislature intended to send a clear message to the victims of domestic abuse, and the perpetrators of such crimes, that acts of domestic violence would be neither excused nor tolerated. Furthermore, law enforcement agencies were not only empowered, but encouraged to protect the victims of domestic violence from these abhorrent acts of aggression.
While the Domestic Abuse Assistance Act and other statutory provisions, such as La. R.S. 14:79, authorize law enforcement agencies to use all their powers, including arrest, to enforce court orders, such authorization must be subject to the discretionary powers of law enforcement officers on the scene. The legislature's intent in La.R.S. 46:2131 to "provide a civil remedy for domestic violence which will afford the victim immediate and easily accessible protection," and to "communicate the attitude that violent behavior is not excused or tolerated," does not require law enforcement agencies to abdicate their traditional and essential role of reasonably enforcing the laws, be they civil or criminal, under the circumstances of each case. Indeed, La.R.S. 46:2140 and 14:79, statutes which authorize the arrest of violators of restraining orders, instruct law enforcement officers to "use all reasonable means" in enforcing their provisions. This thin line between the protection of victims of domestic violence and reasonable enforcement of the laws is an often difficult one for law enforcement officers to walk, and it is their actions in navigating this line to which we now turn.

LIABILITY OF THE CITY OF MAMOU
For liability to be imposed upon the City of Mamou, Ms. Ardoin must prove negligence under the duty/risk analysis which has five separate elements:

*298 (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element);
(2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element);
(3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element);
(4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and,
(5) actual damages (the damages element).
Mathieu v. Imperial Toy Corp., 94-952, (La.11/30/94); 646 So.2d 318, 322. For the plaintiff to recover, all the elements must be proven; failure to prove one element results in a complete denial of recovery. Id.
In deciding this case under the duty/risk analysis, we will first examine the issue of whether the City owed a duty to Ms. Ardoin to arrest her husband. The question of whether a duty exists is a question of law. Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984). Appellate review of a question of law is simply a review of whether the lower court was legally correct or legally incorrect. O'Niell v. Louisiana Power & Light Co., 558 So.2d 1235 (La.App. 1 Cir. 1990).
"A police officer's duty to make an arrest is owed to the general public and not to individuals." Moore v. Esponge, 94-1192, (La.App. 3 Cir. 3/8/95); 651 So.2d 962, 966, writ denied, 95-907 (La.5/19/95); 654 So.2d 696. However, under the public duty doctrine, the duty of the police to the general public may be transformed into a duty to an individual (a special duty) through closeness or proximity in time. Kendrick v. City of Lake Charles, 500 So.2d 866 (La.App. 1 Cir. 1986). The existence of a duty and the scope of liability resulting from the breach of that duty must be determined according to the facts and circumstances of each case. Fowler v. Roberts, 556 So.2d 1 (La.1989).
Ms. Ardoin asserts that the City of Mamou breached a special duty owed to her. In support of this assertion, Ms. Ardoin appears to provide two separate justifications for a finding of such a duty. First, she argues that such a duty was statutorily created through La.R.S. 14:79, La.R.S. 46:2131, and La.Code Crim.P. art. 213(1). Second, she argues that the facts and circumstances of this particular case created a special duty by virtue of the closeness and proximity in time between the officer's contact with Mr. Ardoin, and his subsequent shooting of Ms. Ardoin. We shall assess the merits of these two arguments in turn.

EXISTENCE OF A SPECIAL DUTY CREATED BY STATUTE
Ms. Ardoin asserts that the police officers had a special duty to arrest her husband by virtue of La.R.S. 14:79, La.R.S. 46:2131, and La.Code Crim.P. art. 213(1). Therefore, the question is not whether Ms. Ardoin was within the class of persons entitled to protection under the statutes cited, for clearly she was, as the above analysis indicates. The question, rather, is whether the statutes cited create a special duty on the part of the police officers on the scene to arrest Mr. Ardoin for violating the temporary restraining order issued against him. For the reasons enunciated below, we find that the statutes cited created no such relationship.
La.R.S. 14:79 reads in pertinent part:
A. Violation of protective orders is the willful disobedience of ... a temporary restraining order or any ex parte protective order issued pursuant to R.S. 9:306 (see, now, R.S. 9:372), R.S. 46:2131 et seq., or Code of Civil Procedure Article 3604 if the defendant has been given notice of the temporary restraining order or ex parte protective order by service of process as required by law.
* * *
C. Law enforcement officers shall use every reasonable means, including but, not limited to, immediate arrest of the violator,... to enforce a temporary restraining order or ex parte protective order issued pursuant to R.S. 9:306, R.S. 46:2131 et seq., or Code of Civil Procedure Article 3604 if the defendant has been given notice of the Temporary Restraining Order or ex *299 parte protective order by service of process as required by law.
La.Code Crim.P. art. 213(1) further states:
A peace officer may, without a warrant, arrest a person when:
(1) The person to be arrested has committed an offense in his presence; and if the arrest is for a misdemeanor, it must be made immediately or on close pursuit.
La.R.S. 46:2131, as cited above, sets forth the purpose of the Domestic Abuse Assistance Act, providing that law enforcement agencies "shall stress the enforcement of laws to protect the victim and shall communicate the attitude that violent behavior is not excused or tolerated."
Ms. Ardoin asserts that these statutes mandate arrest of any person violating a preliminary or permanent injunction or protective order. Her reasoning seems to be that, when viewed in light of the legislature's stated purpose for the Domestic Abuse Assistance Act, La.R.S. 14:79 mandates arrest for violators of restraining orders, and that La.Code Crim.P. art. 213(1) mandates arrest without a warrant. We find that no such interpretation of these statutes can be maintained.
By the plain language of the statutes, police officers are authorized to arrest, but neither statute mandates arrest. When read in conjunction, we find that La.R.S. 14:79 requires that police officers "shall use every reasonable means, including, but not limited to, immediate arrest ..." The term "shall" is a mandatory term. As used in the statute, however, it simply mandates that police officers use "every reasonable means" to enforce "a preliminary or permanent injunction or protective order." While the statute authorizes arrest of the violator, it does not mandate arrest unless arrest is required to enforce the statute. Likewise, La.Code Crim.P. art. 213(1) states that a peace officer "may" effectuate an arrest without a warrant. The word "may" is not mandatory, but rather implies that a peace officer's power to arrest without a warrant is discretionary. To find otherwise would lead to absurd consequences. Were law enforcement officers under an affirmative duty to effectuate an arrest for every violation of a restraining order, individuals would be arrested even though they posed no threat to the holder of such an order. For example, an individual prohibited from contact with his or her spouse would necessarily be arrested for even a chance encounter on the street. While the situation before us is not so extreme, to hold that the above cited statutes created an affirmative duty to arrest for every violation, no matter how trivial, could lead to such extreme consequences. This, certainly, was not the intent or purpose of the legislature in enacting these statutes.
Since none of the above cited statutes mandates arrest for violations of restraining orders, we must find that no special relationship was created through them. This does not end our inquiry, however, for we must next determine whether the officers breached a duty to arrest under the particular circumstances of this case.

EXISTENCE OF A SPECIAL DUTY CREATED BY CLOSENESS AND PROXIMITY IN TIME
While we have found that no special duty existed by virtue of the above cited statutes, we must still determine whether a special duty existed by virtue of the closeness and proximity in time between the officer's contact with Mr. Ardoin, and his subsequent shooting of Ms. Ardoin.
Initially, it must be noted that Mr. Ardoin was under two contradictory court orders, both obtained by Ms. Ardoin. On April 20, 1993, pursuant to Ms. Ardoin's action for divorce, a temporary restraining order was issued by the district court, enjoining Mr. Aucoin from "verbally and/or physically abusing" Ms. Ardoin, and from "contacting or communicating with her or otherwise interfering with her person and/or activities." The following day, April 20, 1993, Ms. Ardoin requested, and was granted, an order of eviction which commanded Mr. Ardoin to "move out and remain off the premises" of Ms. Ardoin "under penalty of law." Thus, the police officers on the scene were confronted with an individual under two directly contradictory orders. It is within the context of this situation which we must analyze their actions.
*300 The evidence shows that some 24 hours elapsed between the time of the confrontation on April 22 and the shooting on the following afternoon. The evidence further shows that on April 22, Mr. Ardoin did not act in a violent manner or make threats of violence toward Ms. Ardoin and, in fact, that he cooperated with the police when they asked him to leave. On appeal, Ms. Ardoin makes much of her assertion that during the April 22 incident, she informed the police officers that she wanted Mr. Ardoin arrested. However, at trial, only after much prodding by the trial judge, she stated that she did request an arrest; the police officers testified that she never indicated that she wanted Mr. Ardoin arrested. The trial judge specifically found that, "Although plaintiff advised the officers her husband had violated the restraining order, she never requested he be arrested." Nor did she indicate to the police that she feared some violence from Mr. Ardoin. Apparently, Ms. Ardoin expected her husband to be arrested for his violation of the TRO at the time of the incident, but never conveyed that to the police officers, and at the same time expected him to move his belongings out. Given these circumstances on April 22, the police could not have known that Mr. Ardoin would return the next day and shoot Ms. Ardoin. Furthermore, when talking to Police Chief Manuel of the City of Mamou after the April 22 incident and prior to the shooting, Ms. Ardoin informed him that she no longer wanted her husband arrested. She also testified at trial that she had only wanted Mr. Ardoin arrested when he was at her home, but that once he left, she thought that he would not return. Likewise, under the circumstances, there is no reason to believe that the officers should have had any other expectation either. When the officers left the scene that day, they had no reason to believe that Mr. Ardoin would not follow their advice to seek a court order before returning. Thus, we find that the police owed no duty to Ms. Ardoin to arrest her husband on April 22.

CONCLUSION
For the reasons set forth above, the judgment of the trial court is affirmed. Plaintiffappellant, Irish Sedina Ardoin, is cast with all costs of this appeal.
AFFIRMED.
KNOLL, J., concurs in the result.