747 So.2d 675 (1999)
Frederick Jules LATIOLAIS, et al., Plaintiffs-Appellants,
v.
Frank GUILLORY, Sr., et al., Defendants-Appellees.
No. 99-815.
Court of Appeal of Louisiana, Third Circuit.
November 3, 1999.
Writs Denied January 28, 2000.
*676 John Taylor Bennett, Marksville, for Frederick Jules Latiolais, et al.
Frank P. Trosclair, Jr., Opelousas, for Howard Zerangue, Sheriff, et al.
Before DOUCET, C.J., PETERS, and SULLIVAN, Judges.
SULLIVAN, Judge.
Marie Bourque and Frederick Jules Latiolais sued the St. Landry Parish Sheriffs Department and individual employees of the department for damages arising out of the death of Judy Guillory and Tom P. Latiolais. After a trial on the merits, the trial court dismissed their claims. For the following reasons, we affirm the judgment of the trial court.

FACTS
On June 1, 1993, Judith "Judy" Guillory and Tom P. Latiolais, her nine year-old son, were shot and killed by Frank Guillory, Judy's estranged husband. Separate suits were filed by Marie Bourque, Judy's mother, and Frederick Jules Latiolais, father of Judy's two children, Tom and Lauren. Ms. Bourque sought recovery of damages for mental anguish and emotional distress resulting from the deaths of Judy and Tom. Mr. Latiolais sought survival and wrongful death damages for the death of Tom. He also sought survival and wrongful death damages on behalf of Lauren, arising out of Judy's death. The two lawsuits were consolidated and tried on the merits on September 14-16, 1998. The trial court dismissed the plaintiffs' claims against all of the defendants.
The trial court issued written reasons for judgment in which the facts were set forth in detail. After carefully reviewing the record, we adopt the facts of the trial court as our own:
Judy Guillory was first married to Frederick Latiolais of which two children *677 were born, namely, Tom P. Latiolais and Lauren Latiolais. Said marriage ended in divorce in 1990. In 1991, Judy Guillory married a second time and then to Frank J. Guillory, Sr. No children were born of that union. At the time of her death (June 1, 1993), Tom P. Latiolais (who was also killed) was nine (9) years old, and Lauren Latiolais was six (6) years old.
Frank and Judy Guillory had been married for approximately two (2) years prior to this incident. The first documented incident of marital discord occurred April 26, 1993, when Judy Guillory contacted the St. Landry Parish Sheriffs Office "to go and talk to her husband." On that day, Deputy Donald Fruge met with Judy Guillory at Bihm's Grocery near Lawtell, Louisiana. Deputy Fruge had only been with the St. Landry Parish Sheriff's Office for about a month, had no formal domestic violence training, nor had he been to the police training academy. Judy Guillory informed Deputy Donald Fruge that she was scared of Frank Guillory, that Frank Guillory had not hit her, but that Frank Guillory was capable of becoming violent and she wanted to leave him. Deputy Fruge advised Judy Guillory to obtain a restraining order against Frank Guillory and he assisted her in going to their trailer near Lawtell to get her clothes. Frank Guillory was not at home at the time, but arrived at the trailer while they were there. He was advised by Deputy Fruge that Judy was leaving and taking her personal belongings. Frank Guillory commented that she could take all of her stuff because he did not want her back. Deputy Fruge left with Judy and brought her to her mother's (Mrs. Bourque's) house in Lewisburg several miles away. Later that day, Judy Guillory did obtain a temporary restraining order against Frank Guillory protecting herself and her children from him, prohibiting him from going near her residence in Lewisburg and her place of employment in Opelousas and allowing her use of the Ford Bronco among other things.
The next day (April 27, 1993), Deputy Fruge served the temporary restraining order (TRO) on Frank Guillory at his trailer near Lawtell. There was a verbal exchange between them regarding the use of the Ford Bronco as per the court order, but Frank Guillory was neither hostile, violent or threatening. Thereafter, Deputy Fruge left and went to Judy's mother's home in Lewisburg to assist her in the implementation of the court order. Deputy Fruge then escorted Judy and her brother to the trailer near Lawtell to get her belongings and the Bronco. After an interchange between Deputy Fruge and Frank Guillory concerning the truck (Bronco) and some social security papers, Frank Guillory eventually turned the Ford Bronco over to Judy. During this episode, Judy Guillory did not at any time convey to Deputy Fruge any threats by Frank Guillory to her or her children. Frank Guillory displayed no signs of threats or violence toward Judy Guillory. There were no visible signs of violence or injury to Judy Guillory. Deputy Fruge states that he did not file a report on this matter at that time because he was just rendering domestic assistance insofar as there were no visible or outward signs of violence or harm to Judy Guillory or her children. Deputy Fruge later filed a report in the matter on September 22, 1993, at the request of his supervisor.
On April 30, 1993, a judgment was signed granting Judy Guillory a protective order prohibiting Frank Guillory from abusing, harassing, threatening ... her and her children and prohibiting Frank Guillory from going near her residence in Lewisburg unless Judy Guillory requested that he do so. Despite said protective order, there was permissive contact by and between Judy and Frank Guillory. In fact, quite surprisingly, Frank Guillory was allowed on the Bourque *678 premises in Lewisburg without formal objection thereto. Though Mrs. Bourque and Judy's sister (Linda Riley) did not approve of Frank being there, and were scared of him, no action was taken to enforce the protective order until the night of Judy's death. Frank Guillory, between April 30, 1993, and June 1, 1993, was allowed access to the premises on several occasions, would often sit on the swing on Mrs. Bourque's property and even cooked for them on one occasion. Evidently, Judy Guillory did not object to his presence there during the existence of said protective order. Further, Mrs. Bourque acknowledged that there were discussions by and between Frank and Judy regarding their joint purchase of property with plans to build. Most unfortunately, evidence reveals that Frank continued to be a part of Judy's life.
On the day of Judy and Tom's deaths (June 1, 1993), Frank Guillory was on the Bourque property in Lewisburg, evidently without objection. Judy and her kids were staying in a converted bus/camper behind Mrs. Bourque's house and lounge. Later that evening around 9:00 p.m., Lauren went to her grandmother's (Mrs. Bourque's) house at Judy's request to ask Mrs. Bourque to call the sheriff about Frank. Mrs. Bourque went to the bus to check on the situation and confirmed the fact that Judy wanted her to call the sheriffs office. Mrs. Bourque returned home and called the sheriffs office around 9:30 p.m. and requested assistance because her daughter was "having problems with her husband." Defendant, Deputy Myron Guillory, responded to the call for assistance.
The crux of Deputy Guillory's involvement in this case is set forth in his statement.... Said statement was prepared by Deputy Guillory the day after the shooting. Deputy Guillory arrived on the scene (Bourque's Lounge in Lewisburg) at approximately 9:38 p.m. and first spoke to Mrs. Bourque. Mrs. Bourque informed Deputy Guillory that Judy asked her to call the sheriff because she was having some sort of trouble with her husband, Frank Guillory. She further advised Deputy Guillory that there was in existence a restraining order prohibiting Frank Guillory from being on the property, that the two had been "having serious problems lately," and that they were in a converted bus/camper behind her house. Deputy Guillory advised Mrs. Bourque that he would check into the problem and get back with her.
Then, Deputy Guillory proceeded to go around the back to the location of the bus/camper. He knocked on the door and Judy Guillory calmly came out dressed in a pull-over shirt and undergarments. She informed Deputy Guillory that they were trying to work things out, but that she could not tolerate him hitting on her any more. According to Deputy Guillory, after viewing Mrs. Guillory, she did not appear to have any marks on her person, nor did she complain of any injuries. She also stated that she did not want to file charges against Frank Guillory. All she wanted was for him to leave the premises.

Mrs. Guillory stepped outside the bus/camper and Deputy Guillory proceeded to contact Frank Guillory who was still in the bus/camper. Deputy Guillory could see Frank Guillory in the bus on the back bed in his undershorts. At this time, both Judy Guillory and Frank Guillory were in their undergarments. Considering these facts and circumstances, evidently Mrs. Guillory allowed... Frank Guillory not only being on the premises (despite the protective order) but being in the bus/camper, both in undergarments, in an intimate environment.
When contacted by Deputy Guillory, Frank Guillory became furious at the fact that the sheriff had been called and asked why the police had been called again. At that point, Deputy Guillory advised Frank Guillory that he would *679 have to leave the premises. Though angry, and after calming down, Frank Guillory asked to speak to Judy before he left. Judy said it was "okay," so Deputy Guillory allowed them a few minutes to speak while he stood by. After a while, with the conversation not accomplishing anything, Deputy Guillory advised Mrs. Guillory to go inside the bus/camper and advised Frank Guillory that it was time for him to leave. Frank Guillory, in the presence of the deputy (as advised), got in his truck and sped off passing behind Bourque's Club on his way out. At no time in the deputy's presence did Frank Guillory display any outward signs of violence or threaten Judy Guillory with bodily harm. He did what he was told by the deputy and vacated the premises when ordered to do so.
Deputy Guillory then assisted Mrs. Guillory with getting her clothes and kids from the bus/camper to her vehicle (the Ford Bronco), all the while keeping a "watchful eye" out for Frank Guillory. Deputy Guillory remained with Mrs. Guillory until she and the kids were safely in the vehicle and he advised her to drive around while he went back to inform Mrs. Bourque that Frank Guillory was gone and that her daughter was going to be staying with her that night. Before parting, Mrs. Guillory requested that a deputy assist her the next morning at 6:00 a.m. before she went to work, because she did not trust Frank Guillory. She was told to call the sheriff's department when she was ready. After Mrs. Guillory and her two children were safely in their vehicle, and with Frank Guillory gone, Deputy Guillory went to the front of the property (to the lounge) to report back to Mrs. Bourque, who had reported the call. While there talking to Mrs. Bourque, Deputy Guillory heard glass breaking and shots fired coming from the direction of the bus/camper. Deputy Guillory then rushed to the scene and witnessed the Bronco in the same place with Judy Guillory slumped down with blood on her clothes. At that moment, Deputy Guillory saw headlights in the distance and witnessed Frank Guillory's truck leaving the scene through the nightclub parking lot. Judy Guillory and Tom Latiolais lay dead in the vehicle. Frank Guillory was later apprehended and confessed to shooting Judy Guillory.

LAW AND DISCUSSION

Standard of Review
A trial court's findings of fact may not be reversed absent manifest error or unless it is clearly wrong. Stobart v. State of Louisiana, through Dep't of Transp. and Dev., 617 So.2d 880 (La.1993). When reviewing the trial court's findings of fact, the appellate court must review the entire record to determine whether the trial court's conclusion was a reasonable one. Id. If the trial court's findings are "reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as a trier of fact, it would have weighted the evidence differently." Id. at 882.

Liability
On appeal, Ms. Bourque and Mr. Latiolais argue that the trial court committed error in determining that Deputy Guillory and the St. Landry Parish Sheriff's Department are not liable for the deaths of Judy and Tom as a result of Deputy Guillory's failure to arrest Frank Guillory. The basis of their claims against Deputy Guillory is The Louisiana Protection from Family Violence Act, La.R.S. 46:2121, et seq. The intent of the statute is contained in La.R.S. 46:2131, which provides, in part:
It is the intent of the legislature to provide a civil remedy for domestic violence which will afford the victim immediate and easily accessible protection. Furthermore, it is the intent of the legislature that the official response of law enforcement agencies to cases of domestic violence shall stress the enforcement of laws to protect the victim and shall communicate the attitude that violent behavior is not excused or tolerated.
*680 Specifically, the plaintiffs rely upon La. R.S. 46:2140 of the act, which provides, in part:
Whenever a law enforcement officer has reason to believe that a family or household member has been abused, the officer shall immediately use all reasonable means to prevent further abuse, including:
. . . .
(2) Arresting the abusive party in case of simple assault, aggravated assault, or simple battery, whether or not in the presence of the officer, when the officer reasonably believes there is impending danger to the physical safety of the abused person in the officer's absence. If there is no cause to believe there is impending danger, arresting the abusive party is at the officer's discretion.
The conduct of Deputy Guillory must be analyzed under the duty-risk analysis. Hardy v. Bowie, 98-2821 (La.9/8/99); 744 So.2d 606. The duty-risk analysis requires a plaintiff to prove that the conduct in question was a cause-in-fact of the resulting harm, that the defendant owed a duty of care to the plaintiff, that the requisite duty was breached by the defendant, and that the risk of harm was within the scope of protection afforded by the duty breached. Id., citing Berry v. State, through Dep't of Health and Human Resources, 93-2748 (La.5/23/94); 637 So.2d 412.
Whether Deputy Guillory owed a duty to Judy Guillory and Tom Latiolais is a question of law. Stroik v. Ponseti, 96-2897 (La.9/9/97); 699 So.2d 1072, citing Faucheaux v. Terrebonne Consol. Gov't, 615 So.2d 289 (La.1993). See also Hardy, 744 So.2d 606. We must determine whether there is "any jurisprudential or statutory rule or policy reason why, under the facts and circumstances of this case," the sheriff's department would owe a duty to plaintiffs to compensate them for their injuries. Id., at p. 12, 744 So.2d at 614. The Protection from Family Violence Act imposes a duty upon law enforcement officers in situations where domestic abuse or violence has occurred. The duty imposed upon law enforcement officers by La.R.S. 46:2140(2) mandates that officers "use all reasonable force to prevent further abuse." This mandate includes arresting the abusive party where simple assault, aggravated assault, or simple battery has occurred, "when the officer reasonably believes there is impending danger to the physical safety of the abused person in the officer's absence." Arresting the abuser is discretionary, "[i]f there is no cause to believe there is impending danger."
In Hardy, the supreme court described the duty of a police officer in performing his function as an officer:
Generally, a "police officer has a duty to perform his function with due regard for the safety of all citizens who will be affected by his action." His authority must at all times be exercised in a reasonable fashion and he must act as a reasonably prudent man under the circumstances. Officers are held to choosing a course of action which is reasonable under the circumstances.
Id. at p. 12; 744 So.2d at 614 (citations omitted).
The trial court determined that Deputy Guillory acted reasonably under the circumstances presented on June 1, 1993. We must consider whether this determination was reasonable in light of our review of the record. In its reasons for judgment, the trial court analyzed the circumstances which Deputy Guillory was faced with on June 1, 1993, stating:
[U]pon arrival on the scene at the bus/camper, Judith Guillory neither complained of any injuries nor did she appear to have any marks on her person. She voluntarily allowed Frank Guillory back onto her property and into her life despite their domestic history. They were in an intimate environment in "bed time" clothing upon the officer's arrival. She stated that she did not want to file charges against Frank Guillory. All she wanted him to do was *681 leave. Frank Guillory did not threaten her or the officer. He did what the officer told him to do. He was compliant and non-violent.
The appropriate assessment of an impending danger, vel non, is at the time of the occurrence, and not after the fact. The fact that Judith Guillory was killed does not create a prior status of impending danger. Prior to Judith Guillory's death, there was no impending danger. Frank Guillory did what he was told to do. There was no fight, fracas or altercation. The officer had the situation under control. He effectuated the removal of Frank Guillory from the premises and assisted Judith Guillory and her children to her vehicle with specific instructions to drive the vehicle around (to her mother's house/club). At that point in time, there was no impending danger. For some unknown reason, she did not follow the officer's instructions and drive around. Somehow, some way, in the interim, Frank Guillory returned to the premises and killed both Judith Guillory and Tommy Latiolais. What really happened (as to why she did not drive around) will never be known.
... Frank Guillory did not act in a violent manner or make threats of violence toward Judith Guillory; Frank Guillory cooperated with Deputy Guillory and left when ordered to do so; and, Judith Guillory did not want Frank Guillory arrested. Considering the facts presented in this case, Deputy Guillory could have arrested Frank Guillory, but he did not have a legal duty to do so. Therefore, there was no breach of any duty. Deputy Guillory did not abuse his discretion in not arresting Frank Guillory. The proximate cause of the unfortunate, unnecessary and senseless killing of Judith Guillory and Tommy Latiolais was Frank Guillory, not Deputy Myron Guillory.
Plaintiffs strongly argue that the facts of this case clearly show that Deputy Guillory was unreasonable in his assessment of the situation. William Kenneth Katsaris testified as an expert witness on behalf of plaintiffs. Mr. Katsaris was qualified as an expert in law enforcement training and procedures. Based upon Mr. Katsaris' testimony, plaintiffs argue that the facts make it clear that there was impending danger to Judy and Tom, so that Deputy Guillory was mandated by the statute to arrest Frank Guillory. They argue that Deputy Guillory did not have adequate training in the handling of situations involving domestic abuse, that he did not have adequate information available to him through the sheriff's department regarding the outstanding protective order against Frank Guillory, and that he did not do an adequate investigation into Ms. Guillory's allegations of abuse when he arrived at the scene. Additionally, they argue that Deputy Guillory did not give adequate consideration to her complaints of being hit/ slapped by Frank Guillory, i.e., finding no evidence of bruises on her person. Plaintiffs argue that it was error to allow Frank Guillory to leave the premises because he was "furious" that Judy had called the sheriff's department and because it took Deputy Guillory some time to calm him down. They also argue that the trial court misinterpreted the situation presented in the bus/camper when Deputy Guillory arrived when it concluded that the situation was "intimate." Further, they view Ms. Guillory's request to go to her mother's house and her request for a deputy to return in the morning when she would be going to work was a fact evidencing impending danger. Consequently, they argue that the trial court's perception of the facts as to whether Deputy Guillory had reasonable cause to believe there was impending danger was clearly wrong.
George Armbruster testified as an expert in the field of law enforcement training on behalf of the defendants. Mr. Armbruster complimented Deputy Guillory for his handling of the situation. He explained that in domestic situations it is not unusual for one of the parties to be upset upon the arrival of the police and that it was Deputy Guillory's duty to calm Frank Guillory down. Further, he pointed out that Judy Guillory's telling Deputy Guillory *682 that she had been slapped by Frank Guillory did not make it a mandatory arrest situation. He opined that an arrest under the circumstances was discretionary. Mr. Armbruster testified that Deputy Guillory followed his training regarding the prevention of further abuse by getting Frank Guillory to leave the premises because another altercation between Frank and Judy was avoided. He concluded that Deputy Guillory's actions were reasonable in light of the circumstances and that the circumstances were not such that Deputy Guillory had cause to believe Judy and Tom were in impending danger.
We are mindful of the purpose and intent of the Louisiana Protection from Violence Against Family Act. At the same time, we are mindful that there is a "thin line between the protection of victims of domestic violence and reasonable enforcement of the laws [which] is an often difficult one for law enforcement officers to walk." Ardoin v. City of Mamou, 96-54, p. 4 (La.App. 3 Cir. 11/20/96); 685 So.2d 294, 297. Having reviewed the record, we find that the trial court's conclusion that Deputy Guillory and the St. Landry Parish Sheriff's Department did not breach their duties to Judy Guillory and Tom Latiolais is reasonable. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.