# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-882

REGINALD PHILLIPS

VERSUS

CITY OF CROWLEY, ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 2010-10153
HONORABLE MARILYN CARR CASTLE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, James T. Genovese, and David Kent Savoie, Judges.

**AFFIRMED.**

James L. Pate
Jason T. Reed
Sara Rodrigue
NeunerPate
One Petroleum Center
1001 West Pinhook Road – Suite 200
P. O. Box 52828 (70505-2828)
Lafayette, LA 70503
Telephone:  (337) 237-7000
COUNSEL FOR:
     Defendant/Appellee - City of Crowley

Thomas Keith Regan
P. O. Box 688
Crowley, LA 70527-0688
Telephone:  (337) 783-7141
COUNSEL FOR:
     Defendant/Appellee - City of Crowley

**Harold Dewey Register, Jr.**
**216 Rue Louis XIV**
**Lafayette, LA 70508**
**Telephone: (337) 981-6644**
**COUNSEL FOR:**
        **Plaintiff/Appellant - Reginald Phillips**

**Roshell Jones**
**405 West Main Street - Suite 107**
**Lafayette, LA 70501**
**Telephone: (337) 504-3437**
**COUNSEL FOR:**
        **Plaintiff/Appellant - Reginald Phillips**

**Chaz H. Roberts**
**Chaz H. Roberts Law, LLC**
**112 Oil Center Drive – Suite M**
**Lafayette, LA 70503**
**Telephone: (337) 504-3202**
**COUNSEL FOR:**
        **Defendant/Appellee - City of Crowley**

**Kimberly Phillips**
**Louisiana Correctional Institute for Women**
**7205 Highway 74**
**St. Gabriel, LA 70776**

**THIBODEAUX, Chief Judge.**

Reginald Phillips appeals the trial court judgment finding the City of Crowley not liable for damages he sustained after being shot by his wife, Kimberly Phillips. Preceding the shooting, the City of Crowley Police Department ("Crowley Police") had agreed to escort Mr. Phillips to his marital home to retrieve personal belongings amidst ongoing marital strife. The police gained entry for Mr. Phillips, but left the home before he had finished retrieving his belongings. Soon after the police left, Ms. Phillips shot Mr. Phillips in the back. Mr. Phillips then sued the City of Crowley, among others, alleging its police were negligent in leaving him alone with his wife. The trial court found the actions of the Crowley Police were reasonable and assessed complete liability to Ms. Phillips. Because the record demonstrates a reasonable factual basis for the trial court's judgment, we affirm.

I.

**ISSUE**

We must determine whether the trial court manifestly erred in finding the Crowley Police were not negligent.

II.

**FACTS AND PROCEDURAL HISTORY**

Reginald and Kimberly Phillips are former spouses whose relationship was rife with discord. The Crowley Police Department Call Tracking System shows that between 1996 and 2009, over a dozen complaints were made by either

Mr. or Ms. Phillips against the other. One such complaint occurred on July 1, 2009, roughly two weeks before the shooting on which this case is premised.

In this incident, Crowley officers arrived at the Phillips' residence after both Mr. and Ms. Phillips called the police and made accusations of abuse against the other. Officers took statements from both parties but did not interview the independent witness who corroborated Mr. Phillips statement that Ms. Phillips had caused the confrontation by throwing a brick at his head. An officer on the scene, Richard Baudoin, arrested Mr. Phillips after finding "marks" on Ms. Phillips. Following this incident, Ms. Phillips filed a Petition for Protection from Abuse against Mr. Phillips. The district court issued a temporary restraining order against Mr. Phillips which required him to leave the marital home.

On July 15, 2009, a hearing on the protective order took place. The hearing officer denied Ms. Phillips's request for the order, finding she was the clear aggressor in the confrontation. Further, the hearing officer recommended mutual restraining orders and issued a consent order which mandated the parties refrain from contact unless accompanied by the police. By mistake, however, the consent order was not presented to either of the Phillips for their signature or given to Jack Miller, counsel for Mr. Phillips.

After the dismissal of Ms. Phillips's request for a protective order, Mr. Phillips went to his marital home and discovered the locks had been changed. He then went to the Crowley Police and requested an escort to his marital home to retrieve personal belongings. He was told to provide documentation that the protective order had been dismissed. Mr. Phillips returned to the police station the next day, on July 16, 2009, with the necessary documentation, and the Crowley Police arranged an escort.

Crowley Officers Richard Baudoin, Brandon LaFosse, and David Hoffpauir then met Mr. Phillips at his marital home. The officers knocked on the door and informed Ms. Phillips that Mr. Phillips could enter the home and retrieve his belongings. Minutes after he had begun to gather his things, Mr. Phillips claims Officer Baudoin began to shout at him to hurry because he did not have time to babysit. Mr. Phillips then called his attorney, Mr. Miller, who spoke with Officer Baudoin and explained to him that Mr. Phillips had a legal right to retrieve his belongings.

After the phone call, Mr. Phillips continued to gather his belongings. During this time, testimony conflicts on whether or not Mr. Phillips dismissed the officers. Roughly 20 minutes after the Crowley officers arrived, they left the residence. The officers informed Ms. Phillips of their departure. Mr. Phillips, however, claims he was never informed by the officers that they were leaving and had no knowledge they were no longer there.

Soon after the police left, Ms. Phillips shot Mr. Phillips in the back several times, permanently paralyzing him from the waist down. Following the shooting, Mr. Phillips sued the City of Crowley, among others, alleging its police were negligent in abandoning their escort and leaving him alone with his wife. The trial court found no liability on behalf of the City of Crowley and assessed complete liability to Ms. Phillips. The court concluded that the Crowley Police were not negligent in leaving the Phillips' residence because they did not know how long Mr. Phillips would be there, they did not have the authority to make either party leave, the situation before their departure did not seem dangerous, and they were unaware of Ms. Phillips's alleged volatility and past confrontations between the parties. Mr. Phillips appealed.

III.

## STANDARD OF REVIEW

An appellate court may not reverse a trial court's factual finding absent of manifest error. *Stobart v. State through Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993). As such, a trial court's factual finding will not be reversed unless a review of the record in its entirety establishes both that a reasonable factual basis does not exist for the finding and that the finding is clearly wrong. *Id.* Additionally, on appeal, the issue to be resolved is whether the trial court's finding was reasonable. *Id.* If the trial court's finding is "reasonable in light of the record reviewed in its entirety," the appellate court "may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 882-83.

IV.

## LAW AND DISCUSSION

Mr. Phillips contends the trial court manifestly erred in ruling the actions of the Crowley Police were not negligent. We find no manifest error. The record demonstrates a reasonable factual basis for the trial court's finding of no liability on the part of the Crowley Police in the shooting of Mr. Phillips.

The liability of the Crowley Police is determined under the duty-risk analysis. *Hardy v. Bowie*, 98-2821 (La. 9/8/99), 744 So.2d 606. The duty risk analysis requires a plaintiff to "prove that the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care to plaintiff, the requisite duty was breached by the defendant, and the risk of harm was within the scope of protection afforded by the duty breached." *Id.* at 613 (citations omitted).

4

Here, the trial court found the Crowley Police owed a duty to Mr. Phillips. The parties do not dispute this finding. What remains in dispute is whether the Crowley Police breached a duty to Mr. Phillips.

Generally, police officers have a duty to choose "a course of action which is reasonable under the circumstances." *Id.* at 614. In prior cases assessing the reasonableness of police under circumstances where domestic discord has ended in severe violence, this court has analyzed the actions of the police in light of the foreseeability of the impending danger. *See Wilson v. Town of Mamou*, 07-409 (La.App. 3 Cir. 12/19/07), 972 So.2d 461, *writ denied*, 08-198 (La. 3/28/08), 978 So.2d 307 and *Latiolais v. Guillory*, 99-815 (La.App. 3 Cir. 11/3/99), 747 So.2d 675, *writs denied*, 99-3350, 99-3415 (La. 1/28/00), 753 So.2d 832, 833. The pertinent consideration, then, is whether the actions of the Crowley Police were reasonable in light of the foreseeability of the shooting that occurred.

Here, the trial court found that the Crowley officers were reasonable in leaving the Phillips' home because the shooting of Mr. Phillips by his wife was not foreseeable. The court found that the officers had no knowledge of Ms. Phillips's alleged volatility and were unaware of any significant domestic issues between her and her former husband. These factual findings have support in the record.

Of the three officers charged with escorting Mr. Phillips on July 16, 2009, two testified to not being aware of the Phillips' ongoing marital issues and one officer, with some knowledge of their past confrontations, was not afforded much credibility by the trial court due to inconsistencies in his narrative. Officer Hoffpauir testified that he was unaware of past domestic situations between Mr. and Ms. Phillips. He further testified that although he had responded to a call at

their residence just two weeks prior, on July 1, 2009, he was told the situation was under control soon after arriving and received no information about what had occurred there. Officer LaFosse similarly testified that he went to the Phillips' residence on July 1, 2009, but that when he arrived everything was settled, and he had learned no specifics about what had occurred there.

Officer Baudoin, however, had knowledge about the incident at the Phillips' residence on July 1, 2009. He testified that weeks prior to July 16, 2009, he arrived at the Phillips' home and arrested Mr. Phillips for domestic abuse after finding "marks" on Ms. Phillips. The trial court chose not to heavily weigh Officer Baudoin's testimony, however, stating that his testimony was "all over the place." Indeed, in his testimony, Officer Baudoin could not recall much about the July 1st incident or the July 16th incident. When presented with his deposition, Officer Baudoin stated that he did not remember making some of the statements in his deposition, that reading his deposition would not help to refresh his memory, and that he did not read his deposition before signing it. Thus, of the two officers with testimony the court found reliable, neither testified to being aware of past confrontations between Mr. and Ms. Phillips. Moreover, the trial court did not find the occurrence on July 1, 2009, to necessarily impute knowledge of significant domestic issues since the request for a protective order resulting from this incident was dismissed.

Further, although Mr. Miller testified to Ms. Phillips's volatility, there is nothing in the record to suggest this information was ever given to the police, as noted by the trial court in its oral reasons for judgment. Thus, the record demonstrates a factual basis for the trial court's finding that the shooting of Mr.

6

Phillips was not foreseeable to the Crowley officers due to their ignorance of Ms. Phillips's alleged volatility and significant past confrontations between the couple.

The trial court also found the officers were reasonable in quitting their escort duty because they did not see any danger in the situation at the Phillips' residence before leaving. This factual finding has support in the record. Officer LaFosse testified that before leaving the Phillips' residence on July 16, 2009, some bickering occurred between Mr. and Ms. Phillips but that no actual dispute took place. Officer Hoffpauir testified that before he left the residence, he did not observe any danger or threats of violence. Mr. Phillips testified that while retrieving his belongings he did not argue with his wife and was attempting to peacefully remove his things. Consequently, the testimony of the officers and Mr. Phillips about the lack of conflict at the Phillips' home prior to the officers' departure supports the trial court's finding that the shooting that occurred soon after was not foreseeable.

In sum, the trial court found the officers were reasonable in leaving because they had no knowledge of Ms. Phillips's alleged volatility, they were ignorant of any significant past domestic issues between the Phillips, and they saw no danger in leaving Mr. and Ms. Phillips together, given the lack of conflict at the residence before their departure. The trial court's finding that the shooting was not foreseeable to the Crowley officers is supported by the testimony of several witnesses. Moreover, it is supported by the Crowley Police protocol in place. While there were a dozen complaints made by Mr. and Ms. Phillips to the police against each other over the course of their marriage, including complaints of domestic abuse, Crowley Police protocol does not require dispatchers to notify officers of a history of multiple complaints coming from one residence and does

not require officers to do any research about previous complaints when called to a location. Additionally, the fact that the consent decree which mandated police presence whenever Mr. and Ms. Phillips were at the same residence was not furnished to the police prior to the shooting supports the trial court's finding that the officers had no knowledge as to the severity of the domestic issues of the former couple. While it is evident from the record that the Phillips had significant ongoing marital discord, the record also shows that the officers assigned to escort Mr. Phillips did not necessarily have knowledge of these circumstances.

The trial court had other findings in support of its conclusion, such as the contention that the officers' duty to Mr. Phillips ended when Mr. Phillips allegedly indicated that the officers could leave. However, this reasoning is not persuasive, because if Mr. Phillips had been in probable danger, the police would arguably be negligent in abandoning him in the face of peril solely because they had permission to do so. What is paramount in a determination of whether the Crowley Police's actions were reasonable is whether they left in the face of foreseeable danger. The trial court found the danger was not foreseeable to the officers charged with escorting Mr. Phillips, and its finding has factual support in the record.

If we are to credit Mr. Phillips's narrative, for which there is support in the record, it seems that, overall, the Crowley Police have been, at the very least, dismissive in their handling of some of his complaints of abuse by his former wife, who seemingly used her position and relationships formed within her employ as dispatcher for the Crowley Police as leverage in their marital disputes. While we might have weighed the evidence differently in assessing the negligence of the Crowley Police, we are constrained by the standard of appellate review in reaching

our conclusion. Thus, given the support for the trial court's finding of non-negligence on behalf of the Crowley Police in the record and the great deference afforded such factual determinations on appeal, we can find no manifest error. As such, we affirm.

## V.

## <u>CONCLUSION</u>

Based upon the foregoing reasons, we affirm the judgment of the trial court finding no liability on the part of the City of Crowley in the shooting of Mr. Phillips. Costs of this appeal are assessed against Mr. Phillips.

**AFFIRMED**.