Henry Clay Greenberg, J.
On September 28, 1953 Harold Kearney, a New York City policeman, while walking on the platform of a subway station on his way to report for duty, accidentally dropped a paper bag in which he was carrying his off-duty revolver. It went off when it hit the ground, the bullet striking plaintiff, who was walking about 10 feet to the rear of Kearney.
There is no problem in resolving the question of Kearney’s liability. ‘ ‘ A very high degree of care is required from all persons using firearms in the immediate vicinity of other people, no matter how lawful, or even necessary, such use may be” (4 Shearman and Redfield on Negligence [rev. ed.], § 761, p. 1742). No. 192 of the Regulations of the Police Department provides that members of the department “ shall exercise the utmost care in handling firearms.” The carrying of a loaded revolver in a paper bag at arm’s length, especially in a crowded city, is a clear disregard of basic standards of safety and constitutes actionable negligence. It may be observed that Kearney was found guilty after a hearing by the department of neglect of duty in the violation of the regulation requiring him to use the utmost care in carrying his revolver.
The serious problem in this case concerns the claimed liability to plaintiff of the codefendant, the City of New York. Plaintiff argues that the city is liable under the doctrine of respondeat superior for injuries resulting from the negligent carriage of a revolver by a policeman, who is required to carry it at all times, even when off duty. The city urges that it cannot be held liable, because Kearney was not at the time actually engaged in performing police work or police action within the scope of his employment.
The law is, of course, now well settled in this State that a municipality may be cast in liability for the negligence of an officer or employee in performing a governmental function. The waiver of sovereign immunity by section 8 of the Court oi Claims Act included the civil divisions of the State and made them answerable for the wrongful acts of their officers and employees ‘ ‘ in accordance with the same rules of law as applied to actions in the supreme court against individuals or corporations ”. This was paraphrased in Runkel v. City of New York (282 App. Div. 173, 178). “In other words, in each case the test now is whether an individual or private corporation, assuming that he or it were obligated to discharge the governmental duty involved, would be liable to the injured person for a breach of that duty.” Thus, the doctrine of respondeat superior — that *78 the master is liable in damages for injuries caused by his servant’s negligent performance of his duties — is now applicable with respect to municipal officers and employees.
The doctrine has always been consistently applied by our courts and was deemed so well stated in the early case of Rounds v. Delaware L. & W. R. R. Co. (64 N. Y. 129, 133, 134) as to merit quotation and emphasis in the fairly recent case of Sauter v. New York Tribune (305 N. Y. 442, 444, 445): “ 1 the rule was declared to be, that the master was responsible eiviliter for the wrongful act of the servant causing injury to a third person, whether the act was one of negligence or positive misfeasance, provided the servant was at the time acting for the master, and within the scope of the business intrusted to him. The master is liable only for the authorized acts of the servant, and the root of his liability for the servant’s acts is his consent, express or implied, thereto * * * and this, although the servant departed from the private instructions of the master, provided he was engaged at the time in doing his master’s business, and was acting within the general scope of his employment.’ ”
The Sauter opinion, however, went on to point out, at page 445 (quoting now from Mott v. Consumers’ Ice Co., 73 N. Y. 543, 547): “ ‘ But if a servant goes outside of his employment, and without regard to his service, acting maliciously, or in order to effect some purpose of his own, wantonly commits a trespass, or causes damage to another, the master is not responsible ’ ”.
The issue in this case, then, narrows down to the question as to whether Kearney, at the time he carried this revolver and negligently permitted it to go off, was engaged in acting for his master — the City of New York — within the scope of the business intrusted to him and general scope of his employment.
A member of the police force is required to carry his regulation service revolver at all times, with the qualification that he may substitute therefor a Colt or Smith & Wesson revolver of not less than .32 caliber when off duty and not in uniform (N. Y. City Police Dept. Reg., No. 281). The apparent basis for this rule is that the off-duty policeman is required to be available to perform in his employer’s behalf at all times even though technically off duty. The fulfillment of this obligation to be available for service and to be prepared for service constitutes positive performance of the requisites of the policeman’s employment. Such performance even in a negligent or imperfect manner contrary to the warrant of section 192 does not refute, alter or terminate the intrinsic character and nature of the act. In these circumstances there exists no affirmative pursuit by the *79 policeman of an interest which could be termed personal, inimicable or otherwise separate and distinct from the performance of his employer’s command. The employer is absolved of liability where the employee is not participating in any act or function beneficial to the employer’s interest or where the employee is clearly acting in furtherance of his personal interest. The defendant policeman’s employment is of a divisible character, viz., on tour or patrol — active duty; off duty — available for emergency duty. The instant circumstances demonstrate that the defendant policeman though technically within the off-duty classification was engaged in the execution of a function specifically prescribed by the defendant employer the City of New York and the careless or negligent performance of such duty — carrying a gun — nonetheless constituted performance of a requirement of his employment and in furtherance of his employer’s interest. The employer is therefore responsible for the consequences of such acts.
It is unfortunate in my view that the regulations do not specifically state how the policeman shall carry his revolver when not in uniform, merely enjoining £ £ utmost care”, although a holster is required to be used when in uniform. This lack of specification might well be regarded as an added argument for holding the city responsible for the negligent, indeed reckless, manner in which this off-duty gun was being carried. But in any event, the city must be held responsible under the doctrine of respondeat superior for damages occasioned by negligent performance of a required function within the line of duty of a policeman.
To impose such liability it is not necessary that the policeman be then actively engaged in police “work”. It is sufficient that he is performing some act in furtherance of his police function.
It is important to distinguish this situation from the cases wherein intoxicated or unbalanced police officers, generally after a tour of the bars, proceeded to shoot some innocent bystander. Absent proof of prior notice of such propensities on the part of the authorities, the city may not be held liable under the doctrine because the officer has then gone £ £ outside of his employment, and without regard to his service, acting maliciously, or in order to effect some purpose of his own ” (Mott v. Consumers’ Ice Co., 73 N. Y. 543, supra).
The injuries sustained by the plaintiff are serious in character both from the standpoint of pain, suffering and permanency and also from the standpoint of economic loss. The city did *80 not in any respect challenge the extent of the injuries or the loss sustained. The plaintiff was examined by an orthopedist on behalf of the city, but he was not called to testify. On the basis of all of the testimony, therefore, the court directs judgment in favor of plaintiff and against the defendants in the sum of $50,000. This constitutes the decision of the court pursuant to section 440 of the Civil Practice Act.