# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT


## 03-559


**BOUAKHAY SIRIPANYO**

**VERSUS**

**ALLSTATE INDEMNITY COMPANY, ET AL.**


\*\*\*\*\*\*\*\*\*\*
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2001-1429
HONORABLE BYRON J. HEBERT, PRESIDING
\*\*\*\*\*\*\*\*\*\*


**SYLVIA R. COOKS**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*


Court composed of Ned E. Doucet, C.J., Sylvia R. Cooks and Michael G. Sullivan, Judges.

**REVERSED AND RENDERED.**


**John B. Lambremont, Sr.**
**4550 North Boulevard, Suite 220**
**Baton Rouge, LA 70806**
**(225) 928-7524**
**COUNSEL FOR PLAINTIFF-APPELLANT**
    **Bouakhay Siripanyo**


**C. Thomas Bienvenu**
**Julius W. Grubbs, Jr.**
**Haik, Minvielle & Brubbs**
**1017 E. Dale Street**
**P.O. Box 11040**
**New Iberia, LA  70562-1040**
**(337) 365-5486**
**COUNSEL FOR DEFENDANT-APPELLEE**
    **David Mortuary, Inc., d/b/a David Funeral Home**

**Robin L. Jones**
**Stephen J. Oats**
**Oats & Hudson**
**100 E. Vermilion Street, Suite 400**
**Lafayette, LA   70501**
**(225) 233-1100**
**COUNSEL FOR DEFENDANT-APPELLEE**
        **Michael Neustrom, Sheriff of Lafayette Parish**

**COOKS, Judge.**

Plaintiff, Bouakhay Siripanyo, appeals the trial court's judgment granting summary judgment in favor of the defendants. For the following reasons, we find summary judgment was inappropriate in this matter, and remand for trial on the merits.

**FACTS**

On Sunday, March 19, 2000, a funeral service was scheduled for 2:00 p.m. at David Funeral Home in New Iberia, Louisiana. After completion of the funeral service, the body was to be delivered to a crematory in Lafayette Parish. Arrangements had been made by Mike Collado, the funeral director, for a police escort from Iberia Parish through St. Martin Parish into Lafayette Parish, where the crematory was located.

The funeral service began and ended ahead of schedule, resulting in an earlier departure to the crematory. According to Collado, he called the Lafayette Parish Sheriff's Office and told them he was running ahead of schedule. This testimony is disputed by Lafayette Parish Sheriff's Office logs, which indicate Collado did not call the sheriff's office until he was about to enter Lafayette Parish.

Collado led the procession, which totaled over forty vehicles. Upon leaving the funeral home, the procession was accompanied by a New Iberia City Police vehicle and an Iberia Parish Sheriff's Office vehicle as escorts. When the procession reached the St. Martin Parish line, a St. Martin's Parish Sheriff's Office vehicle was waiting and the Iberia Parish Sheriff's vehicle withdrew.

Upon approaching the Lafayette Parish line, Collado noticed there was no police escort waiting. The St. Martin Parish Sheriff's Office vehicle withdrew at the Lafayette Parish line. Collado testified he again called the Lafayette Parish Sheriff's Office to inquire about the escort, which call the sheriff's office logs document as

occurring at 2:41 p.m. According to Collado, he then reduced his speed from thirty-five (35) to forty (40) miles per hour down to twenty-five (25) to thirty (30) miles per hour. This testimony was disputed by two other witnesses who testified the procession was traveling forty (40) to fifty (50) miles per hour.

After Collado's call to the Lafayette Parish Sheriff's Office, Deputy George Crowder was dispatched to escort the procession and immediately proceeded towards the parish line area. Deputy Crowder testified it took him approximately ten minutes to get to the parish line. He saw the procession coming onto U.S. Highway 90, but since he was traveling in the opposite direction he had to proceed past the overpass and turn around. While this was occurring, the funeral procession was beginning to cross the intersection of U.S. 90 and St. Nazaire Road. U.S. 90 is a four lane highway, and at the intersection with St. Nazaire Road there are two left turn lanes on the inside of the two westbound lanes (the funeral procession was traveling west on U.S. 90).

The procession, led by Collado, began passing through the intersection on a green light. At this time, Bill Gonsoulin was driving north on St. Nazaire Road approaching U.S. 90. He slowed as he approached the intersection because the light was red. When the light turned green, Gonsoulin increased his speed to cross U.S. 90. He crossed the eastbound lanes of U.S. 90 and then the two left turn lanes, where there were cars waiting. As he proceeded across the westbound lanes, his vehicle collided with a car driven by Bouakhay Siripanyo, who was part of the funeral procession. Gonsoulin was unharmed, but Siripanyo suffered injuries as a result of the accident. Immediately after the accident occurred, Deputy Crowder arrived at the scene. The police logs showed the accident occurred at 2:46 p.m.

Siripanyo was the sixth vehicle in the funeral procession. Siripanyo stated he

crossed the intersection on a yellow light and increased his speed to do so.[1]  He testified he did not see Gonsoulin's vehicle prior to impact.  According to Siripanyo, he had his headlights activated as part of the funeral procession.  Joey Landry, who was stopped in one of the turning lanes on U.S. 90, stated he saw Siripanyo in his rear view mirror approach the intersection and cross through on a red light.  Gonsoulin testified he saw nothing which indicated a funeral procession, i.e., no flashing lights, no hearse and no vehicles in a steady, unbroken line.  However, Collado and Deputy Crowder both testified that the procession was long and well organized, with the participants following closely together and with the headlights of their vehicles on.

Siripanyo eventually sued Gonsoulin and his insurer, Allstate Indemnity Company, alleging negligence on the part of Gonsoulin.  He also sued David Mortuary, Inc., d/b/a David Funeral Home, contending it was negligent in failing to provide a police escort, in failing to notify the Lafayette Parish Sheriff's Office in a timely fashion that they needed a police escort, and/or in failing to advise the funeral procession participants that the procession would be unescorted during part of the route.  Siripanyo also named Michael Neustrom, Sheriff of Lafayette Parish, as a defendant, alleging he was negligent in failing to provide a police escort and/or failing to advise the funeral procession participants that the procession would be unescorted during part of the route.  Each defendant filed Motions for Summary Judgment seeking dismissal of Siripanyo's claims.  After a hearing on the motions, the trial court rendered judgment granting each defendant's motion, issuing the following written reasons for judgment:

> It is not disputed that the funeral procession was unescorted upon entering Lafayette Parish, however, there is no authority for the proposition that a funeral home has a duty to provide a police escort for a funeral procession.  Likewise there is no authority for imposing such

---

[1] We note Siripanyo is Laotian and his questions and answers were translated into English.

a duty on law enforcement agencies. Further, the Court finds that any fact issues about why the funeral procession was unescorted are not material issues. Funeral participants must obey the regular traffic laws. The fact that funeral processions often usurp the right of way, and most persons stop for such processions out of respect or when instructed by officers posted at the intersections cannot be held to establish a legal right of way. *Deshotels v. Southern Farm Bureau Casualty Ins. Co.*, 224 So.2d 191, 194 (La.App. 3 Cir. 1969). To allow participants in a procession to drive through intersections in wanton disregard of the traffic signals set up to control passage through the intersections would be to give such persons rights which are not even afforded to operators of emergency vehicles. *Funderburk v. Rayfield*, 274 So.2d 777, 780 (La.App. 3 Cir. 1973).

The Court concludes that there is no genuine issue of material fact in regard to the sole cause in fact of the accident being the negligence of the Plaintiff in increasing his speed at the intersection and proceeding against a red light. The motions for summary judgment filed by Allstate Indemnity Company, David's Mortuary, Inc., and Sheriff Neustrom are granted and Plaintiff's petition will be dismissed.

Siripanyo has appealed the trial court's judgment, contending it erred in granting any of the summary judgments.

## ANALYSIS

Appellate courts review summary judgments *de novo* under the same criteria that govern the trial court's determination of whether a summary judgment is appropriate. *Schroeder v. Bd. of Supervisors of Louisiana State Univ.*, 591 So.2d 342 (La.1991). The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions. The procedure is now favored and shall be construed to accomplish these ends. La.Code Civ.P. art. 966(A)(2). A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). A fact is material when its existence or nonexistence is essential to the plaintiff's cause of action. *Smith v. Our Lady of the Lake Hosp.*, 93-2512 (La. 7/5/94), 639 So.2d 730; *Davis v. M & E Food Mart, Inc. No. 2*, 02-585 (La.App. 3 Cir. 10/30/02), 829 So.2d 1194. Any doubt as to a dispute

regarding a material issue of fact must be resolved against granting the summary judgment motion and in favor of trial on the merits. *Id.*

In determining whether liability exists in a tort case, Louisiana has adopted a duty-risk analysis. *Harris v. Pizza Hut of Louisiana, Inc.*, 455 So.2d 1364 (La.1984). Under this analysis, the plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the duty was breached by defendant, and the risk of harm was within the scope of protection afforded by the duty breached. *Berry v. State, Through Dep't of Health and Human Resources*, 93-2748 (La. 5/23/94), 637 So.2d 412.

## I. *Summary Judgment in Favor of David Funeral Home.*

The trial court stated in its written reasons for judgment that "there is no authority for the proposition that a funeral home has a duty to provide a police escort for a funeral procession." David Funeral Home cites *Richard v. Swiber*, 98-1515 (La.App. 1 Cir. 9/24/99), 760 So.2d 355, as "clearly stat[ing]" that there is no duty on the part of the funeral home to warn or instruct the participants in a procession. We find both these assertions to be incorrect.

The *Richard* case did not state there was no duty on the part of a funeral home to warn or instruct procession participants. The court in *Richard* specifically held that the funeral home's "failure to advise the participants to be careful was not a substantial factor in causing this accident," not that there could be no duty to warn or instruct. However, we find that any alleged failure to warn or instruct in the present case would likewise not be a substantial factor in causing this accident. A great number of drivers in the procession, including iripanyo were Laotian and did not speak English. With such an inability to communicate with many of the participants, it is not reasonable to assume any warning given by Collado would have had any causative effect on the accident.

The trial court's statement that "no authority" exists for finding a funeral home may have a duty to provide a police escort for a funeral procession is also in error. In *Pickett v. Jacob Schoen & Son, Inc.*, 488 So.2d 1257, 1259 (La.App. 4 Cir. 1986), the fourth circuit stated it "cannot say as a matter of law that a funeral director has no duty to those who participate in a funeral procession arranged by him to prevent the risks encompassed by the facts of this case." In *Pickett*, the plaintiff claimed there was a breach of duty in the funeral director failing to suggest, offer, or provide an escort for the funeral procession down a major thoroughfare and in failing to advise the participants of the proper rules of the road for an unescorted procession. The trial court granted the funeral home's motion for summary judgment which asserted it owed no such duty as alleged by plaintiff. The fourth circuit reversed, stating "we cannot say as a matter of law that a funeral director has no duty to those who participate in a funeral procession arranged by him to prevent the risks encompassed by the facts of this case." *Id.* at 1259.

David Funeral Home again points to the case of *Richard*, 760 So.2d 355, as support for its proposition that a funeral home does not have a duty to provide for a police escort. In *Richard*, a funeral procession participant ran a stop sign and was struck by a vehicle which did not have a stop sign at the intersection. The procession was led by a police escort that was arranged by the funeral home. The procession participant filed suit against the funeral home, the police, and the other driver. All of the defendants filed motions for summary judgment. The trial court found there were factual matters in dispute relative to the negligence of the police, the driver and the funeral home, and denied all motions for summary judgment. The funeral home appealed.

The first circuit reversed the trial court's judgment and entered summary judgment in favor of the funeral home. The *Richard* court discussed the opinion in

-6-

*Pickett*, but found it was "not helpful" for two reasons. It noted that when *Pickett* was decided, summary judgment was not favored as it is now. Secondly, it observed the *Pickett* court was concerned with a possible breach of duty for not providing an escort on a major highway, whereas in the present case the funeral home had arranged for a police escort. *Richard* did not hold a funeral home cannot have a duty to provide for the safe passage of a funeral procession, but instead, held the funeral home was not liable because its actions were not a cause-in-fact of the accident.

We find the trial court erred in concluding there is "no authority for the proposition that a funeral home has a duty to provide a police escort for a funeral procession" and in granting summary judgment on that basis. Further, the factual dispute as to whether Collado called the Lafayette Parish Sheriff's Office upon the early departure from the funeral home is both disputed and material, thus precluding the trial court's grant of summary judgment for the funeral home.

## II. *Summary Judgment in Favor of Sheriff Neustrom.*

Siripanyo contends the trial court erred in granting summary judgment to Sheriff Neustrom on the grounds it had no duty to the participants of the funeral procession when the sheriff's office assumed the responsibility of escorting the funeral procession and did not arrive timely.

Siripanyo argues *LeJeune v. Allstate Insurance Co.*, 365 So.2d 471 (La.1978), imposes a duty on police officers to do what is necessary to ensure a funeral procession safely passes through intersections. In *LeJeune* a police officer, who was providing an escort to a funeral procession, failed to secure an intersection, which led to an accident between a driver in the funeral procession and a driver on a favored road. The *LeJeune* court found the officer at fault for his failure to protect the intersection. *LeJeune*, however, is factually distinguishable from the present case in at least one notable respect. It involved a situation where a police officer had assumed

the duty to provide safe passage and was unable to do so. All parties acknowledge Deputy Crowder did not arrive on the scene until after the accident had occurred, and thus did not begin to conduct traffic.

As David Funeral Home points out, there is no specific statutory duty for a police officer to provide escorts for funeral processions, but *LeJeune* does establish that if a police department agrees to provide its services as an escort it must do so in a non-negligent fashion. Assuming Collado made arrangements with the Lafayette Parish Sheriff's Office for an escort days before the funeral (and there is testimony that he did so), upon its agreement to provide that escort a duty was created. The trial court's conclusion that "any factual issues about why the funeral procession was unescorted . . . were not material" was based on its erroneous finding that there is no authority to hold that the Lafayette Parish Sheriff's Office had a duty to provide an escort in this case. Therefore, the trial court erred in granting Sheriff Neustrom's motion for summary judgment.

### III. Summary Judgment in Favor of Allstate/Bill Gonsoulin.

Siripanyo argues there are numerous questions of fact which exist regarding Gonsoulin's fault. The trial court held the sole cause of the accident was the action of Siripanyo in running the red light. We find there is no genuine question of fact that Siripanyo entered in to the intersection on a red light. Two independent witnesses, Joey Landry and Kapkeo Khieamdavanh (who was driving the vehicle behind Siripanyo in the funeral procession), testified as such. Thus, Gonsoulin was the favored driver.

However, in *LeJeune*, 365 So.2d 471, the supreme court found the negligence of both favored and unfavored drivers can be proximate causes of accidents involving funeral processions. This court in *Deshotel v. Southern Farm Bureau Cas. Ins. Co.*, 224 So.2d 191, 194, stated the following:

> If the motorist who has the favorable traffic light sees or should see that the other driver is going to violate his right-of-way, and thereafter the favored driver has a reasonable opportunity to avoid the accident and fails to do so, then the negligence of the latter in failing to take evasive action when he had an opportunity to do so is a proximate cause of the accident. *Denton v. Fontenot*, La.App. 3rd Cir. 1968, 216 So.2d 310; *Smith v. Borchers*, 1962, 243 La. 746, 146 So.2d 793; *Vico Insurance Co. v. New Orleans Public Service, Inc.*, La.App.4[th] Cir 1965, 177 So.2d 425; *McDaniel v. Grain Dealers Mutual Insurance Co.*, La.App. 1st Cir. 1966, 182 So.2d 561; *Martin v. Slocum*, La.App. 2nd Cir. 1962, 147 So.2d 454.

The law is clear that Gonsoulin is not automatically absolved from fault simply because he was the favored driver. *See also Funderburk v. Rayfield*, 274 So.2d 277 (La.App. 3 Cir. 1973). Our review of the evidence reveals there are numerous questions of material fact concerning whether Gonsoulin had a "reasonable opportunity to avoid the accident." There was contradictory testimony over whether it was evident that Siripanyo was part of a funeral procession. Joey Landry stated he saw nothing to indicate that Siripanyo's vehicle was part of a funeral procession, although he could not state specifically whether his vehicle's headlights were activated. Deputy Crowder and Collado both testified the funeral procession was well organized, with the vehicles following closely together with their headlights on. Khieamdavanh also testified that several vehicles were stopped in the northbound lane of St. Nazaire road to allow the funeral procession to pass under the red light and Gonsoulin passed those vehicle before the accident occurred. Landry and Gonsoulin dispute this account. Landry also testified he believed Gonsoulin may have been unable to avoid the accident because he could not see Siripanyo's car because vehicles were present in the U.S. 90 turning lanes.

These questions of fact enter into whether Siripanyo has a cause of action against Gonsoulin. Therefore, they are material facts, and their presence precludes the granting of summary judgment in favor of Gonsoulin and Allstate.

**DECREE**

For the foregoing reasons, the trial court's grant of the motions for summary judgment in favor of David Mortuary, Inc., Sheriff Michael Neustrom and Allstate Indemnity Company are reversed. This matter is remanded to the trial court for further proceedings consistent with this opinion. All costs of this appeal are assessed equally against David Mortuary, Inc., Sheriff Michael Neustrom and Allstate Indemnity Company.

**REVERSED AND REMANDED.**