# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**12-1306**

REGINALD PHILLIPS

VERSUS

CITY OF CROWLEY, ET AL.

**\*\*\*\*\*\*\*\*\***
## APPEAL FROM THE
## FIFTEENTH JUDICIAL DISTRICT COURT
## PARISH OF ACADIA, DOCKET NO. 2010-10153-L
## HONORABLE MARILYN C. CASTLE, DISTRICT JUDGE
**\*\*\*\*\*\*\*\*\***

## SYLVIA R. COOKS
## JUDGE

**\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Jimmie C. Peters, James T. Genovese, Shannon J. Gremillion, and John E. Conery, Judges.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**

**Conery, J., concurs in part, dissents in part, and assigns reasons.**

Harold D. Register, Jr.
216 Rue Louis XIV
P.O. Box 80214
Lafayette, LA  70598-0214
(337) 981-6644
**ATTORNEY FOR PLAINTIFF/APPELLANT**
   Reginald Phillips

Rochell Jones
405 W. Main St., Suite 107
Lafayette, LA  70501
(337) 504-3437
**ATTORNEY FOR PLAINTIFF/APPELLANT**
   Reginald Phillips

James L. Pate
Sara Rodrigue
Laborde & Neuner
One Petroleum Center, Suite 200
1001 West Pinhook Road
Lafayette, LA  70503
(337) 237-7000
**ATTORNEY FOR DEFENDANT/APPELLEE**
   The City of Crowley

Thomas K. Regan
525 West Court Circle
Crowley, LA  70526
(337) 783-7141
**ATTORNEY FOR DEFENDANT/APPELLEE**
   The City of Crowley

Homer Ed Barousse, Jr.
Barousse & Craton, L.L.C.
P.O. Box 1305
Crowley, LA  70527-0730
(337) 785-1000
**ATTORNEY FOR DEFENDANT/APPELLEE**
   Wayne A. Melancon, Sheriff of Acadia Parish, Louisiana

**COOKS, Judge.**

This appeal arose out of an incident where Kimberly Phillips shot her husband, Reginald Phillips, in their home on July 16, 2009. In the weeks prior to the shooting, Kimberly and Reginald had been involved in an ongoing domestic dispute.

On July 1, 2009, Kimberly filed a Petition for Protection from Abuse against Reginald. The district court issued a temporary restraining order (TRO) against Reginald, which required him to leave the family home. A hearing on the matter was set for July 15, 2009, to determine whether a protective order should be issued.

A hearing officer denied the request for a protective order. Reginald then requested an escort by the Crowley Police Department to the family home so he could retrieve his personal belongings. After arriving at the police station he was asked by the Assistant Chief to produce documentation that the protective order had been dismissed. Reginald contacted Jack Miller, his attorney, and on the following day, July 16, 2009, he went to Mr. Miller's office to secure a copy of the court order. While there, he was told by Mr. Miller the Crowley Police Chief, K. P. Gibson, had been informed of the need for a police escort. When Reginald arrived at the police station later that afternoon, he produced the necessary documentation and was then escorted by a Crowley Police Officer to the home.

Upon arrival at the home, Kimberly was informed that Reginald had court approval to enter the home and retrieve his personal belongings. Soon after Reginald arrived at the house, two more officers appeared on the scene. At that time, there were three officers present: Richard Baudoin, Brandon LaFosse, and David Hoffpauir.

Reginald claimed, while he was retrieving his belongings, Officer Baudoin began to shout at him to "hurry up because he didn't have time to babysit."

According to Reginald, the officers then began to demand he leave the residence. At this point, Reginald phoned Mr. Miller to advise him what was occurring. Reginald stated he suggested to Mr. Miller that it might be best to leave the residence and return with officers that were willing to wait for him while he gathered his personal belongings. Mr. Miller then spoke with Officer Baudoin on the telephone and explained to him that Reginald was legally entitled to retrieve his personal belongings.

After Officer Baudoin spoke with Mr. Miller, Reginald continued to gather his belongings. During this time, the three officers left the premises. Reginald maintained he was not told by the officers they were leaving, and was not aware they had left the premises.

When Kimberly was informed by the officers that they intended to leave, she called her friend, Danielle Domingue, and asked her to come over. Ms. Domingue and Kimberly worked for the Acadiana Parish Sheriff's Office, although in different departments (Ms. Domingue in 911 and Kimberly in the tax collection department). Shortly after speaking with Kimberly, Ms. Domingue arrived with her kids. Ms. Domingue stated when she arrived at the house, the officers asked her if she was going to stay at the home because they could no longer stay. Officer Baudoin, in his deposition testimony, stated all the officers left because Ms. Domingue was at the home.

After staying for a short period, Ms. Domingue also decided to leave because her children were getting "antsy." Ms. Domingue stated she returned back to the residence about fifteen minutes after she left because she was worried when Kimberly did not answer her phone or return a text message she sent. Upon returning to the premises, she saw police cars and an ambulance present. After

2

getting out of the car, she was informed that Reginald had been shot in the back multiple times by Kimberly.

Reginald testified he was bent over a desk unplugging a wireless router, when he heard Kimberly say "this is all you're going to have." He then looked over his shoulder and saw Kimberly standing in the hallway with a gun. Reginald stated before he could move, Kimberly shot him in the back. As a result of the shooting, Reginald suffered spinal cord injuries and is paralyzed.

Kimberly was eventually indicted by a grand jury for aggravated second degree battery as a result of the shooting. Kimberly pled guilty, and is currently incarcerated.

Reginald eventually filed suit against the City of Crowley and the Crowley Police Department, alleging they were negligent in failing to protect and stay with him while he was retrieving his belongings. Also named as defendants were the Acadia Parish Sheriff's Office, Acadia Parish, and Sheriff Wayne A. Melancon for their negligence in continuing to retain Kimberly and allowing her to keep possession of a government-issued firearm after discovering she committed a felony theft at the Acadia Parish Sheriff's Office.

On July 8, 2009 (eight days before the shooting), Kimberly was confronted by her supervisor concerning three missing deposits from the tax department of the Acadia Parish Sheriff's Office. Apparently, Kimberly admitted she had a gambling addiction which led her to steal the money. In total, Kimberly stole nearly $60,000.00 from the Acadia Parish Sheriff's Office.

Reginald asserted Sheriff Melancon did not terminate Kimberly from her duties after he discovered the theft, nor did he require her to turn over the government-issued gun (which was the weapon used to shoot Reginald). Reginald

3

maintained Kimberly continued to work for the Sheriff's Office and keep her gun until she was terminated after shooting him.

Shortly after suit was filed, the City of Crowley, the Acadia Parish Sheriff's Office and Sheriff Melancon filed motions for summary judgment. The trial court granted summary judgment in favor of the Acadia Parish Sheriff's Office and Sheriff Melancon, finding the sheriff owed no particular duty to Reginald to protect him against the risk of harm that occurred in this case. The trial court stated "there was no foreseeability by the sheriff that his employee, who worked in a civil department, would - - and, albeit that she had apparently stolen money at some point before this - - that she would then commit a violent crime."

The trial court also granted the City of Crowley's motion for summary judgment, finding "under these facts, the City of Crowley did not breach a duty to Mr. Phillips, because their general duty to protect the public did not extend to the duty to prevent the harm that befell to him by this intentional act, which was not foreseeable under the circumstances of this case."

Reginald has appealed the trial court's judgment, contending it erred in granting the motions for summary judgment filed by the City of Crowley, the Acadia Parish Sheriff's Office and Sheriff Melancon.

## ANALYSIS

In reviewing a motion for summary judgment, an appellate court "applies a de novo standard of review, 'using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, i.e., whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law.'" *Gray v. Am. Nat'l Prop. & Cas. Co.*, 07-1670, p. 6 (La.2/26/08), 977 So.2d 839, 844 (quoting *Supreme Servs. & Specialty Co., Inc. v. Sonny Greer*, 06-1827, p. 4 (La.5/22/07), 958 So.2d 634, 638). As a general principle, our law

4

in Louisiana favors the summary judgment procedure as a vehicle by which the "just, speedy, and inexpensive" determination of an action may be achieved. La.Code Civ.P. art. 966(A)(2). The trial court is required to render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B).

> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

La.Code Civ.P. art. 966(C)(2).

"[F]acts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La.7/5/94), 639 So.2d 730, 751 (quoting *South Louisiana Bank v. Williams*, 591 So.2d 375, 377 (La.App. 3 Cir. 1991), *writ denied*, 596 So.2d 211 (La. 1992)). A genuine issue is one in which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue, and summary judgment is appropriate. *Id*. Whether a fact is material is determined in light of the relevant substantive law. *Weingartner v. La. IceGators*, 02-1181 (La.App. 3 Cir. 4/17/03), 854 So.2d 898, *writ denied*, 03-1388 (La.9/13/03), 853 So.2d 645. In determining whether an issue is "genuine," courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence. *Smith*, 639 So.2d 730;

5

*Simon v. Fasig-Tipton Co. of New York*, 524 So.2d 788, 791 (La.App. 3 Cir.), *writs denied*, 525 So.2d 1048, 1049 (La. 1988).

**I.  The Acadia Parish Sheriff's Office/Sheriff Melancon's Motions for Summary Judgment.**

Reginald contends the trial court erred in granting the Acadia Parish Sheriff's Office and Sheriff Melancon's motion for summary judgment, asserting, had the sheriff's office taken back the gun, he would not have been shot. Reginald maintains "it is certainly foreseeable that someone who has committed a major felony crime against the Chief Law Enforcement Office of Acadia Parish because of a major gambling problem, also has the propensity to commit additional criminal activity." The trial court, in granting the motion for summary judgment concluded the "harm that befell the plaintiff had nothing to do with her taking money from the sheriff's department. It had to do with the fact that she turned violent in some domestic situation."

In *Roberts v. Benoit*, 605 So.2d 1032 (La.1991), the Louisiana Supreme Court considered a case where Benoit, an off-duty police deputy, shot the plaintiff accidentally while he was playing with his gun while intoxicated. A negligence action was brought against the sheriff. The facts established Benoit was hired by the sheriff to serve as a cook. It was common practice for all employees to be commissioned and to undergo one day of firearm training.

The *Roberts* court noted the extent of protection owed a particular plaintiff is determined on a case-by-case basis to avoid making a defendant an insurer of all persons against all harms. The court examined the ease of association between the risk posed by the deputy's conduct and the Sheriff's duty to exercise reason when hiring and training deputies. The court found the ease of association in that case

6

was, "at best, attenuated." *Id.* at 1044. The court discussed the scope of protection element of the duty-risk analysis in detail:

> The most critical issue in the instant case is whether the injury plaintiff sustained was within the contemplation of the duty discussed above. There is no "rule" for determining the scope of the duty. Regardless if stated in terms of proximate cause, legal cause, or duty, the scope of the duty inquiry is ultimately a question of policy as to whether the particular risk falls within the scope of the duty.
>
> . . .
>
> In short, the scope of protection inquiry asks "whether the enunciated rule or principle of law extends to or is intended to protect this plaintiff from this type of harm arising in this manner."
>
> Generally, the scope of protection inquiry becomes significant in "fact-sensitive" cases in which a limitation of the "but for" consequences of the defendant's substandard conduct is warranted. These cases require logic, reasoning and policy decisions be employed to determine whether liability should be imposed under the particular factual circumstances presented. This is such a case. Particularly, the court of appeal's "but for" conclusion is that had Benoit not been commissioned as a deputy he would not have been carrying the gun that caused plaintiff's injuries.
>
> In determining the limitation to be placed on liability for a defendant's substandard conduct--i.e., whether there is a duty-risk relationship--we have found the proper inquiry to be how easily the risk of injury to plaintiff can be associated with the duty sought to be enforced. Restated, the ease of association inquiry is simply: "How easily does one associate the plaintiff's complained-of harm with the defendant's conduct? . . . Although ease of association encompasses the idea of foreseeability, it is not based on foreseeability alone." Absent an ease of association between the duty breached and the damages sustained, we have found legal fault lacking.

*Id.* at 1044-45 (citations omitted.) The *Roberts* court rejected plaintiff's argument that the sheriff was negligent or vicariously liable, because the shooting was not connected in any way to Benoit's duties as an employee of the sheriff. Specifically the *Roberts* court found no liability as Benoit went "outside of his employment, and without regard to his service, acting maliciously, or in order to effect some purpose of his own." *Id.* at 1038, quoting *Collins v. City of New York*, 11 Misc.2d 76, 171 N.Y.S.2d 710, 714 (Sup.Ct.1958), *aff'd* 7 N.Y.2d 822, 196 N.Y.S.2d 700,

164 N.E.2d 719 (1959). Likewise in this case we conclude Kimberly was outside her employment and was effecting a purpose of her own when the shooting took place. The trial court did not err in granting the Acadia Parish Sheriff's Office and Sheriff Melancon's motion for summary judgment.

## II. *The City of Crowley's Motion for Summary Judgment.*

The trial court granted summary judgment in the City of Crowley's favor because it believed once the officers had secured entry into the house of Reginald, they had no further duty. A review of the following comments by the trial court reveals its reasoning in granting summary judgment:

> And while the police officers certainly had a duty – based on the court order that is not in dispute was the only existing court order – they did have a duty to assist him in regaining access to his house, its undisputed at some point, they communicated to him that they would not remain with him indefinitely. They asked him to leave. He admits this. He called his lawyer. And his lawyer advised the police officers you cannot make him leave.

> At that point, the police officers had no further duty. They had – They had acquired for Mr. Phillips what he asked for, which was entry into his home. There is no evidence that there were any threats being made by either party against the other or any other reason why the police were required to remain there indefinitely.

> And I do not accept the argument that Mr. Phillips was willing to leave if the police officers were no longer remaining, because the police officer made it known to them that they were not willing to remain and that he should – and advised him that, had he wished to have extended supervision, there were resources available through the marshall's office.

A review of the record shows several of the above conclusions reached by the trial court are, at a minimum, disputed questions of fact which are not properly disposed of at a summary proceeding.

While it is clear that the officers did tell Reginald they wanted him to leave the residence, Reginald responded to this by calling his attorney, who then spoke with Officer Baudoin. While talking with Mr. Miller, Officer Baudoin left the

8

room where Reginald was packing his things. Officer Baudoin testified as follows regarding this sequence of events:

> A. [Reginald] gave me the phone. I talked to Jack [Miller]. Jack was telling me, you can't make him leave. I said, I know I can't make him leave, but to help the situation, you know, he's packing up, he's going. So it's going to be good, huh? He said, well, yeah. I gave him the phone back, so –
> . . .
> Q. *At any point, did you see Reginald stop packing, and say, hey, I changed my mind, I'm not leaving*?
>
> A. *A little while later, yes.*
>
> Q. A little while later?
>
> A. Yes, ma'am.
>
> . . . .
>
> Q. Did Reginald, at any point in time, request that you stay, you stay there until he finished –
>
> A. *I don't remember* –

It is not clear from this testimony whether, after the phone conversation between Officer Baudoin and Mr. Miller, any of the officers present informed Reginald they were all leaving. Reginald may well have assumed Mr. Miller's phone conversation cleared up the problem. There also is no unequivocal evidence that Reginald, at any point, was aware the officers left the premises while he was inside.

More importantly, the trial court's conclusion that "[t]here is no evidence that there were any threats being made by either party against the other or any other reason why the police were required to remain there indefinitely" is not supported by the record. Officer Baudoin testified in his deposition that the reason he was dispatched to the scene was there was "a *disturbance* at that residence." Officer Baudoin also stated, shortly after speaking on the phone with Mr. Miller, Kimberly and Reginald "started arguing back and forth; screaming, screaming,

9

screaming." Officer LaFosse testified Kimberly and Reginald were "bickering." Reginald's attorney, Jack Miller, testified one of the officers told him "there could be a lot of trouble here so [Reginald] really ought to go." There was also testimony that police officers were previously called to the residence because of reported domestic incidents. Officers Hoffpauir and LaFosse confirmed their personal knowledge of prior incidents which required police intervention. Thus, there are material issues of fact relating to whether the officers acted reasonably considering their knowledge of prior incidents between the parties and the alleged volatile exchanges at the scene.

We also reject the trial court's legal conclusion that once the officers secured Reginald's entry into the residence, they no longer had any duty to remain at the residence. This court, citing the case of *Siripanyo v. Allstate Indemnity Co.*, 03-559, p. 8 (La.App. 3 Cir. 12/23/03), 862 So.2d 1254, 1259-60, *writ denied*, 04-182 (La.3/19/04), 869 So.2d 860, has held if a sheriff's department undertakes the responsibility to provide its services as an escort, "they must do so in a non-negligent fashion." *Batiste v. Farm Bureau*, 07-1586, p. 3 (La.App. 3 Cir. 5/7/08), 982 So.2d 975, 977.[1]

In this case, the City of Crowley Police Department, after requiring Reginald to produce the required court documentation, agreed to escort him to the home he shared with Kimberly. Thus, it must be determined whether the actions of its officers were reasonable under the facts and circumstances of this case. This court in *Rhymes v. Winn-Dixie Louisiana, Inc.*, 10-1357 (La.App. 3 Cir.3/9/11), 58 So.3d 1068, discussed the evaluation of reasonableness in a summary judgment proceeding:

---

[1] Both *Batiste* and *Siripanyo* involved situations where the respective police department undertook the responsibility of escorting funeral processions.

10

Summary judgment is ordinarily not an appropriate procedural device when there are issues that require the determination of the reasonableness of acts and conduct of parties under all the facts and circumstances. *Wylie v. Peltier*, 10-332 (La.App. 3 Cir. 11/3/10), 2010 WL 4325838.

We find, at a minimum, material questions of fact existed as to whether the officers acted reasonably in leaving the residence under the circumstances of this case. There was clear testimony the parties were hostile towards each other *while the officers were present* and several of the officers on the scene were personally aware police officers had previously visited the residence because of domestic disputes between Reginald and Kimberly. The trial court's resolution of these factual disputes at the summary judgment level was inappropriate.

We also note La.R.S. 46:2140 sets forth the duty of police officers in a domestic abuse situation. It provides "[w]henever a law enforcement officer has reason to believe a family or household member or dating partner has been abused, the officer shall immediately use all reasonable means to prevent further abuse[.]" The record established there were several incidents of domestic abuse situations between the parties. There was an incident, acknowledged by the trial court, where Reginald called the authorities because Kimberly had thrown a dangerous object at him. Just two weeks prior to the incident in question, Kimberly filed a Petition for Protection from Abuse against Reginald. Reginald also was arrested just one week prior to the incident for domestic assault by the police. While Reginald emphatically denied any incidents of abuse or assault on his part, the fact that these incidents occurred (regardless of their true nature), was a clear indication of the volatile and hostile relationship between the parties. Considering the officers' testimony that they were aware of the past domestic incidents between the two parties, the duty imposed by the legislature in enacting La.R.S. 46:2140 may also provide a legal basis for the claims raised by Reginald.

11

In *Wilson v. Town of Mamou*, 07-409 (La.App. 3 Cir. 12/19/07), 972 So.2d 461, *writ denied*, 08-198 (La. 3/28/08), 978 So.2d 307, the Town of Mamou was found liable for its failure to escort a known victim of abuse to her home to pick up her children. While at the home, she was shot and killed by her abusive boyfriend. In this case, the police did provide an escort for Reginald, but chose to leave him at the site despite knowledge of a history of domestic incidents between the parties and a hostile exchange between the two at the scene. Accordingly, we reverse the grant of summary judgment in favor of the City of Crowley and remand for further proceedings.

## DECREE

For the foregoing reasons, the judgment of the trial court granting summary judgment in favor of the Acadia Parish Sheriff's Office and Sheriff Wayne A. Melancon is affirmed. We reverse the trial court's grant of summary judgment in favor of the City of Crowley and remand for further proceedings. Costs of this appeal are assessed one-half to the City of Crowley and one-half to plaintiff-appellant, Reginald Phillips.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

REGINALD PHILLIPS

VERSUS

CITY OF CROWLEY, ET AL.

**CONERY, J.,  concurring in part and dissenting in part.**

I agree with the affirmation dismissing Sheriff Melancon and the Acadia Parish Sheriff's Office.  I disagree, however, with the denial of Summary Judgment as to the City of Crowley.

Louisiana Revised Statutes 46:2142 provides civil immunity for police officers under these circumstances:  "Any law enforcement officer reporting in good faith, exercising due care in the making of an arrest *or providing assistance* pursuant to the provisions of R.S. 46:2140 and 2141 shall have immunity from any civil liability that otherwise might be incurred or imposed because of the report, arrest, *or assistance provided*."  (Emphasis added).

I disagree with the majority's conclusion that once the officers assisted Mr. Phillips in gaining entry into the residence, they had a duty to stay under R.S. 46:2140.  The officers were called on a courtesy escort at the request of their Police Chief, as requested by Mr. Phillips and his attorney, to help gain entrance to the home and secure his personal belongings.  The uncontradicted material evidence introduced on the Motion for Summary Judgment indicates that, after helping Mr. Phillips secure entrance to the home (the locks had been changed by Mrs. Phillips) and standing by for a reasonable time while Mr. Phillips retrieved his personal belongings, the officers informed Mr. Phillips that they had to leave

for other duties. The officers suggested that Mr. Phillips leave and obtain additional assistance from the Marshall's office. After talking to his lawyer, Mr. Phillips chose to stay, even asking his lawyer to explain to the officers that he had a right to be there. The officers owed no duty to accompany Mr. Phillips in the first place, since they were on a "courtesy" call. After making sure there were no threats of violence and everyone was safe, they left. Danielle Domingue, a friend of Mrs. Phillips and an employee of the Acadia Parish Sherriff's Office, was there when they left.

Even assuming one or more of the officers may have been aware of past domestic incidents between Kimberly and Mr. Phillips, the prior incidents involved alleged violence and threats *by Mr. Phillips* against Mrs. Phillips. The officers had no information to suggest Mrs. Phillips was in any way a threat to Mr. Phillips. Ms. Domingue was present before the officers left, and, even according to Mr. Phillips, the situation was calm and peaceful when the officers left.

The officers reported in good faith and exercised due care in providing assistance pursuant to La.R.S. 46:2140. This case is exactly the type of case for which the legislature provided an immunity for police officers rendering assistance in a domestic situation pursuant to La.R.S. 46:2142. To hold otherwise would have a "chilling effect" on all police officers rendering assistance or reporting in good faith on a domestic call. The instant case is distinguishable from *Wilson v. Town of Mamou*, 07-409 (La. App. 3 Cir. 12/19/07), 972 So.2d 461, *writ denied*, 08-0198 (La. 3/28/08), 978 So.2d 307, cited by the majority, because in that case, based upon her battered physical condition and her verbalization of her fear, the officer was clearly aware of the imminent danger to Ms. Wilson yet failed to act to at all to escort the victim to her residence or to pick up her children. The undisputed facts of this case are more analogous to the facts in *Latiolais v.*

2

*Guillory*, 99-815 (La. App. 3 Cir. 11/3/99), 747 So.2d 675, *writ denied*, 99-3350 (La. 1/28/00), 753 So.2d 832, and *writ denied*, 1999-3415 (La. 1/28/00), 753 So.2d 833, in which the officer had no evidence before him of any immediate danger. As here, the scene before the shooting was calm, with the shooter in both cases giving no indication or warning of violent behavior. In *Latiolais* and in this case, the officers exercised due care based upon the facts before them.

For all of these reasons, I would affirm the Summary Judgment against the City of Crowley and the police officers.