STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

14-1028
CONSOLIDATED WITH 14-1029


AMY TEPPER

VERSUS

RED RIVER ACADEMY, L.L.C.


CONSOLIDATED WITH


AMY TEPPER, ERIC TEPPER,
AND LENI TEPPER

VERSUS

RED RIVER ACADEMY, L.L.C.,
ALICIA DAVENPORT HALL, AND
456 INSURANCE COMPANY


\*\*\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 243,378 C/W 243,384 DIV. "B"
HONORABLE THOMAS M. YEAGER, DISTRICT JUDGE


\*\*\*\*\*\*\*\*\*\*\*\*


JAMES T. GENOVESE
JUDGE


\*\*\*\*\*\*\*\*\*\*\*\*


Court composed of Ulysses Gene Thibodeaux, Chief Judge, James T. Genovese, and D. Kent Savoie, Judges.

REVERSED.

**Joshua M. Palmintier**
**Jennifer Prescott**
**deGravelles, Palmintier, Holthaus, & Fruge, L.L.P.**
**618 Main Street**
**Baton Rouge, Louisiana 70801-1910**
**(225) 344-3735**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
      **Amy Tepper, Eric Tepper, and Leni Tepper**

**R. Scott Iles**
**Post Office Box 3385**
**1200 West University Avenue**
**Lafayette, Louisiana 70506**
**(337) 234-8800**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
      **Amy Tepper**

**David F. Bienvenu**
**Shannon H. Huber**
**Allison D. Tassin**
**Simon, Peragine, Smith & Redfearn, L.L.P.**
**30th Floor - Energy Centre**
**1100 Poydras Street**
**New Orleans, Louisiana 70163**
**(504) 569-2030**
**COUNSEL FOR DEFENDANT/APPELLEE:**
      **Red River Academy, L.L.C.**

**GENOVESE, Judge.**

In this negligence case, Plaintiffs, Amy Tepper, Eric Tepper, and Leni Tepper, appeal the judgment of the trial court granting summary judgment in favor of Defendant, Red River Academy, L.L.C. (RRA). For the reasons that follow, we reverse.

### FACTS AND PROCEDURAL HISTORY

Eric Tepper and Leni Tepper were the legal guardians of Amy Tepper who, beginning July 2008, was a student at RRA, a boarding school in Lecompte, Louisiana. During her residency at RRA, in October 2010, Amy developed an ingrown toenail. She reported her condition to Alicia Davenport Hall, the medical station attendant employed by RRA, who was responsible for tending to the medical needs of the students. Ms. Hall telephoned Woodworth Family Medicine (Woodworth), and Kimberly Bostick-Field, a nurse practitioner, prescribed Cleocin, an antibiotic, for Amy on November 4, 2010.

After taking the antibiotic, Amy began having diarrhea. When Amy's diarrhea continued, Ms. Hall again called Woodworth and spoke to the nurse practitioner's assistant. In response thereto, on December 14, 2010, Ms. Bostick-Field prescribed Lomotil for Amy, to alleviate her diarrhea.

Thereafter, Amy continued to experience diarrhea and also began vomiting. On December 20, 2010, Ms. Hall brought Amy to Woodworth, where she was examined by Ms. Bostick-Field. Amy was then prescribed Phenergan for the nausea and vomiting. On the night of December 20, 2010, Ms. Hall took Amy to the emergency room at Rapides Regional Medical Center (Rapides Regional). Amy was diagnosed with clostridium-difficile colitis and toxic mega-colon, a side effect caused by an allergic reaction to the antibiotic she had taken. After her admission to Rapides Regional, Amy underwent surgery, including a total

colectomy[1] and the creation of an ileostomy.[2]   Amy required two additional surgeries before being released from Rapides Regional.

Amy, Eric, and Leni Tepper filed suit against RRA, alleging that its negligence caused Amy's illness and resultant condition.[3]   A separate negligence action was instituted by Amy against RRA.   The two suits were subsequently consolidated in the trial court.   RRA filed a Motion for Summary Judgment on the issue of liability.   Following a hearing, the trial court granted RRA's Motion for Summary Judgment and dismissed all claims of Amy, Eric, and Leni Tepper.   The Teppers appeal.

## ASSIGNMENTS OF ERROR

The Teppers present the following for our review:[4]

1.  The lower court erroneously held that the standard of care that applies to a boarding school[—]who has constant custody over students twenty-four (4) [sic] hours a day, seven (7) days a week[—]is the same as the standard of care that applies to a public school, that only has custody over its students for eight (8) hours a day and five (5) days a week.

2.  The lower court failed to hold that a breach of the duty of care occurred when an employee of a boarding school failed to obtain medical treatment for a student who has been experiencing negative health symptoms for approximately two (2) weeks.

3.  The lower court erroneously determined that there was no genuine issue of material fact even though medical records, pertaining to the same patient, indicated different dates of the onset of negative health symptoms.

---

[1]A colectomy is generally defined as the "excision of a portion of the colon . . . or of the whole colon." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, pg. 389 (31st ed. 2007).

[2]An ileostomy is generally defined as the "surgical creation of an opening into the ileum[.]" DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, pg. 926 (31st ed. 2007).

[3]Eric and Leni Tepper sought damages for loss of consortium, society, and service.

[4]Amy Tepper's individual counsel also filed a brief on her behalf.   The assignment of error presented therein is worded differently; however, it is encompassed in the Teppers' assignment of error number two.

4. The lower court misapplied the law set out in Louisiana Code of Civil Procedure [A]rticle 966 by granting dismissal of all claims against all parties pursuant to a motion for summary judgment from a single party.

## LAW AND DISCUSSION

Our Louisiana Supreme Court has set forth the governing jurisprudence relative to a motion for summary judgment and our appellate standard of review thereof as follows:

> Appellate review of the granting of a motion for summary judgment is *de novo*, using the identical criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Bonin v. Westport Ins. Corp.*, 05-0886, p. 4 (La.5/17/06), 930 So.2d 906, 910; *Schroeder v. Bd. of Supervisors of La. State Univ.*, 591 So.2d 342, 345 (La.1991). A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact, and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966; *Duncan v. USAA Ins. Co.*, 06-0363, p. 4 (La.11/29/06), 950 So.2d 544, 546-547. A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. *Hines v. Garrett*, 04-0806, p. 1 (La.6/25/04), 876 So.2d 764, 765 (*per curiam*)(citing *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751). A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Hines*, 876 So.2d at 765-66.

*Smitko v. Gulf South Shrimp, Inc.*, 11-2566, pp. 7-8 (La.7/2/12), 94 So.3d 750, 755.

*Hunt v. Golden Corral Corp.*, 13-06, pp. 3-4 (La.App. 3 Cir. 7/3/13), 116 So.3d 1035, 1037. Moreover, "[i]n determining whether an issue is 'genuine,' courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence." *Phillips v. City of Crowley*, 12-1306, p. 5 (La.App. 3 Cir. 6/19/13), 115 So.3d 1240, 1244, *writ denied*, 13-1718 (La. 11/1/13), 125 So.3d 432

3

(citing *Smith*, 639 So.2d 730; *Simon v. Fasig-Tipton Co. of New York*, 524 So.2d 788 (La.App. 3 Cir.), *writs denied*, 525 So.2d 1048, 1049 (La.1988)).

In the instant case, considering the assignments of error as presented for our review, we shall begin by addressing assignment of error number three. For the reasons that follow, we find that genuine issues of material fact remain which precluded the grant of summary judgment. This finding mandates a reversal of the trial court's grant of summary judgment in favor of RRA and renders the remaining assignments of error moot.

The trial court in this case provided Written Reasons on Motion for Summary Judgment. Therein, it is stated, "[b]ased upon the evidence submitted at the [s]ummary [j]udgment hearing, the Court makes the following **findings of fact**[.]" (emphasis added). The trial court's written reasons proceed to specifically list thirteen of these factual findings. Admittedly, not all of these facts were disputed by the parties. However, it is clear from the record that certain facts were in dispute and were contradicted by the testimony and medical evidence which required the trial court to evaluate the evidence. As set forth above, making findings of fact requires a weighing of the evidence by the trier of fact, which is impermissible at the summary judgment stage of any legal proceeding. *Phillips*, 115 So.3d 1240.

Critical to a determination of any potential liability herein is the relevant time frame of the events as they transpired: namely, the date Amy's complaint originated; the date RRA responded to her original complaint; the date the course of antibiotic was begun and completed; the date of onset of Amy's additional complaint of diarrhea; when her additional complaint was made known to RRA; the timing and manner in which RRA responded to the new complaint; the date of onset of nausea and vomiting; the date RRA became aware of the nausea and

vomiting; and the timing and manner in which RRA responded to these additional complaints.

Amy's initial complaint of an ingrown toenail was made to Ms. Hall on October 27, 2010. However, much of what occurred and what was done by RRA between October 27, 2010 and December 20, 2010, when she was ultimately seen by a doctor at Rapides Regional and underwent surgery, has not been established with certainty and is in dispute. Although an antibiotic was prescribed by Ms. Bostick-Field on November 4, 2010, it was not administered by RRA until November 8, 2010. According to Amy, when the she began taking the antibiotic, she "had really bad diarrhea" and "started throwing up really bad." Amy was taken to Woodworth on November 16, 2010, but its records are void of any documentation of an antibiotic being prescribed for her, and the records do not contain any complaints of diarrhea and nausea. The medical record for November 16, 2010, simply documents that Amy was still suffering from the ingrown toenail. According to RRA's medication administration log, Amy took her last dose of the antibiotic the next day, November 17, 2010.

Exactly what subsequent information RRA had about Amy's symptoms and when they had it is also unclear and uncertain. Ms. Hall testified that she was made aware "in late November" that Amy had "a complaint" of diarrhea. However, Ms. Hall testified that when she checked with Amy a couple of days later, Amy told her that "[s]he felt fine." Ms. Hall was certainly aware by December 14, 2010, that Amy was having diarrhea, because she called Woodworth and obtained the prescription for Lomotil. Notably, RRA's medication administration log does not document that the Lomotil was actually given to Amy, and Amy herself denied being given medication for diarrhea.

5

Two shift supervisors at RRA, who were responsible for seeing that the medication was administered, documented that Amy continued to complain of diarrhea. According to one shift supervisor who gave Amy the Lomotil on December 15 and 16, 2010, despite the prescription medication, Amy "let [him] know throughout the day she was still having diarrhea." Yet, Ms. Hall testified that Amy reported to her on December 16, 2010, that her diarrhea was a little better. A second shift supervisor noted that Amy was still not feeling well on December 19, 2010. Amy told this shift supervisor that her stomach hurt and that she had vomited after dinner. Ms. Hall was then told, on December 19, 2010, that Amy had also begun vomiting, which resulted in Ms. Hall taking her to Woodworth on December 20, 2010, where she was seen by Ms. Bostick-Field and prescribed medication for nausea. Later that same evening, Ms. Hall took Amy to the emergency room at Rapides Regional.

In addition to the discrepancies found in the testimony of Amy and Ms. Hall, the RRA's medication administration log, and the notes of the shift supervisors, the medical records of Woodworth and Rapides Regional are also inconsistent and in dispute. Woodworth's records of Amy's December 20, 2010 visit document that Amy had begun vomiting the day prior and that she had diarrhea for one week that was "severe." The record also notes that a prescription for Lomotil had been called in, but that Amy still had diarrhea as well as nausea and five episodes of vomiting since then. Further notations indicate that Amy had begun having diarrhea on and off for one month and that it had been "[i]ncreasing in severity [the] past ten days," now with nausea and vomiting. Notably, Ms. Bostick-Field testified that she was unaware of the issues of diarrhea prior to December 14, 2010, when the Lomotil

prescription was called in, and she never actually examined Amy between November 16, 2010, and December 20, 2010.[5]

The Rapides Regional records contain a history of diarrhea and nausea for two weeks as well as "diffuse abdominal pain." Additional records of Rapides Regional note the ten day course of antibiotic which had been completed by Amy two weeks prior, "and then [she] began having diarrhea." Rapides Regional records described her symptoms as being "somewhat intermittent" and indicated that Amy's condition had "become more persistent over the last week[,]" and was accompanied with vomiting.

In addition to the genuine issues of material fact that remain relative to when Amy's symptoms began, when they became known to RRA, what action was taken by RRA, and when action was taken, we further find that genuine issues of material fact remain concerning RRA's alleged lack of reasonable supervision and failure to timely obtain medical treatment. The Woodworth doctor, Dr. Guillot, testified that when side effects of the antibiotic developed, the prescribing health care provider "should have been notified[;]" and, a timely notification of Amy's condition to the health care provider "could have potentially" avoided the unfortunate progression that occurred in this case. Although Amy's initial complaints began in October 2010, she was not actually seen by a doctor until her condition was diagnosed as emergent on December 20, 2010.

Further, given the evidence in the record, genuine issues of fact remain as to whether or not the appropriate medical protocol was adhered to by RRA. Undisputedly, Ms. Hall was not a nurse during the relevant time period. If a student at RRA had a medical complaint, Ms. Hall, acting as a liaison, was

---

[5]We note that the record contains a lab report of Omega Diagnostics, L.L.C., apparently for the results of blood work drawn at Woodworth on December 1, 2010, for purposes of monitoring Amy's routine medication levels.

responsible for ensuring that their needs were attended to. The student was first required to complete a nurse request form. RRA's arrangement with Woodworth was for Ms. Bostick-Field to then examine the students at RRA in order to avoid having to transport them to the clinic. However, Dr. Guillot testified that he should have been on location at all times when Ms. Bostick-Field was treating patients, and this was not done. Additionally, because of the number of students that complained of ingrown toenails, RRA had established a standard treatment regime. According to Ms. Hall, RRA had a "general protocol from doctor's orders" that the affected toe was to be soaked for two to four days, and an antibiotic ointment was to be applied. If there was no improvement, the student was then supposed to be taken to Woodworth to be seen by Dr. Guillot in case a procedure needed to be performed.

Yet, when Amy was taken to Woodworth on November 16, 2010, she was seen by Ms. Bostick-Field. Despite documentation in Woodworth's records that her ingrown toenail was unresolved at that time, Amy was not seen by Dr. Guillot. Thereafter, with continuing complaints of diarrhea, Amy still was not seen by a doctor, nor was she seen by the nurse practitioner before being prescribed Lomotil on December 14, 2010. Finally, although Ms. Hall testified that, according to protocol, an unresolved toenail warranted a student being taken to Woodworth to see Dr. Guillot, Amy was not actually seen and evaluated by a doctor until December 20, 2010.

Based upon our de novo review of the record, for the reasons set forth above, we find that genuine issues of material fact remain which preclude the grant of summary judgment. Considering the negligence claims asserted herein against RRA, these facts certainly "insure[] or preclude[] recovery, affect[] a litigant's ultimate success, or determine[] the outcome of the legal dispute." *Hines*, 876

8

So.2d at 765. Thus, the trial court's grant of RRA's Motion for Summary Judgment dismissing all claims, with prejudice, is hereby reversed.

## DECREE

For the reasons assigned, the judgment of the trial court granting the Motion for Summary Judgment in favor of Red River Academy L.L.C., and dismissing all of the claims of Amy Tepper, Eric Tepper, and Leni Tepper, is reversed. Costs of this appeal are assessed to Red River Academy, L.L.C.

**REVERSED.**